## SWEETSER v. EMERSON.

(Circuit Court of Appeals, First Circuit. October 18, 1916.)

No. 1230.

1. STATUTES ⚖️235—CONSTRUCTION—PUBLIC STATUTES.

A public statute relating to the military power of the government should be liberally construed so as to make such power effective.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 316; Dec. Dig. ⚖️235.]

2. STATUTES ⚖️235—CONSTRUCTION—ABSURD RESULTS.

Rules of strict and literal construction may be departed from, in order that absurd results may be avoided, and to insure that the statute shall be effective for the purposes intended.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 316; Dec. Dig. ⚖️235.]

3. STATUTES ⚖️216—CONSTRUCTION—LEGISLATIVE INTENT.

While debates in the Legislature may be considered in determining the legislative intent, individual expression of members of the Legislature will not establish such intent, in enacting a statute.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 292; Dec. Dig. ⚖️216.]

4. ARMY AND NAVY ⚖️5½— MILITIA —SERVICE OF UNITED STATES.

Const. art. 1, § 8, declares that Congress shall have power to provide for calling forth the militia to execute the laws of the Union, suppress insurrection, and repel invasion, and to make provision for organizing and disciplining the militia and for governing such part thereof as may be employed in the service of the United States. Dick Law Jan. 21, 1903, c. 196, 32 Stat. 775, as amended by Act May 27, 1908, c. 204, 35 Stat. 399, authorized the President to call into service the state militia. Act June 3, 1916, for the national defense, establishing the National Guard, and intended to increase the efficiency of the militia, provides in section 58 that the National Guard shall consist of the regular enlisted militia armed and equipped as provided by the act. Section 70 provides that enlisted men in the National Guard of the several states and territories serving under enlistment contracts containing an obligation to defend the Constitution of the United States and to obey the orders of the President, shall be recognized as members of the National Guard under the provisions of the act for the unexpired portion of their enlistment contracts, and that, when any such enlistment does not contain such obligation, the enlisted man shall not be recognized as a member of the National Guard until he shall have signed a new enlistment contract, etc. Members of the Massachusetts militia, who had taken an oath to faithfully observe and obey the laws for the regulation of the government of the volunteer militia of the commonwealth, and to support the Constitution of the United States, were called into active service by the President to repel invasion by a foreign foe. *Held* that, as the latter statute should receive a liberal construction, members of the Massachusetts militia who did not elect to sign a new enlistment contract are nevertheless, until the expiration of their terms, subject to being called into active service to repel invasion or put down insurrection, etc.

[Ed. Note.—For other cases, see Army and Navy, Cent. Dig. § 5; Dec. Dig. ⚖️5½.]

Putnam, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; Frederick Dodge, Judge.

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition by Alexander M. Emerson for writ of habeas corpus against Warren E. Sweetser. From an order discharging the petitioner, respondent appeals. Order vacated, with directions that petitioner be returned to military custody, from which he was taken.

George W. Anderson, U. S. Atty., of Boston, Mass. (Major S. T. Ansell, Judge Advocate, of Washington, D. C., and Lewis Goldberg, Asst. U. S. Atty., of Boston, Mass., on the brief), for appellant.

Henry Wheeler, of Boston, Mass. (Harry Le Baron Sampson, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. The rights involved in this case have reference to the question how far the statute of 1903, known as the Dick Law, which was designed to promote the efficiency of the militia, and was amended in 1908, was affected by the subsequent act of Congress of June 3, 1916, known as the National Defense Act, and entitled "An act for making further and more effectual provision for the national defense, and for other purposes."

The general question is whether the act of June 3, 1916, supersedes such prior laws and regulations, and repeals such provisions of the Dick Law, as amended, as authorized the President, in cases of invasion or emergency, to call out and use the organized state militia as a military force to help repel invasion and suppress insurrection, and whether in consequence thereof, under operative provisions of the act of 1916, it is left altogether at the option or election of members of the organized militia of the several states to sign a new enlistment contract or not, and to take an oath of allegiance to the United States of America or not, and to obey the orders of the President of the United States and of the Governor or not, and in the event of an election not to sign a new enlistment contract and take the oath, whether it results from such election that the militiaman, in respect to the unexpired term of his original enlistment, is mustered out and relieved altogether from obligation to respond to the federal emergency call of the President for military aid.

While certain conditions justify rules of technical and strict construction, the particular situation here makes the question more one of interpretation, to be influenced and controlled by the broad and important inquiry whether, under the National Defense Act of June 3, 1916, the purpose of Congress was to weaken or strengthen the federal military arm; and an ascertainment of that character necessarily involves grave consideration of questions of public and private rights and of public policy as well.

[1-4] It is quite likely, if the questions as to these statutes were to be determined under rules of strict and literal construction, that the conclusion reached by the learned judge of the District Court upon careful reasoning, would be quite justifiable; but we are not concerned with that view, because we think that a public statute of this character, which relates to the vital question whether the military power of the government shall be potential and effective in the hands

of the constitutional authorities, or is to be contingent upon the option of constituent members of the lawful military organizations, is one to be determined under broad rules of liberal construction.

In the situation presented, and under rules of liberal construction, the purpose of Congress would be quite controlling, and in ascertaining the purpose of Congress in its efforts under the Dick Law to promote the efficiency of the militia, and under the National Defense Act to make further and more effectual provision for the national defense, it must be assumed that Congress was actuated by the fundamental idea that governments are created for the protection of the rights and liberties of peoples and properties within their domain—that the use of military force may sometimes become necessary, and that to effect the object of governments they should be so maintained as to make the military force effective in the face of imminent exigencies of government emergencies and peril.

An interpretation of the National Defense Act of June 3, 1916, which would strike down all pre-existing laws as to military obligations under pre-existing contracts for national defense through militia service, would be contrary to the usual course of legislation designed to strengthen the Army, and would be so plainly contrary to the necessary idea of government defense and protection, that it would not be adopted unless it was so plainly expressed as to make it manifestly appear that Congress intended weakness rather than strength. Nothing short of clear and apt words would justify such an interpretation of a statute, intended to operate for greater efficiency and greater effectiveness, as would make it operate, through an overthrow of government rights, for less efficiency and less effectiveness.

While there was doubtless no thought in Congress that the voluntary militia plan contemplated by the National Defense Act of 1916 should be used to coerce enlistment into broader fields, it is quite as obviously clear that there was no congressional thought that a failure to do so would operate to set the organized militia of the several states at large from the limited service upon which its members had already entered. So, as we view it, we have no question at all relating to the duty of members of the organized militia to engage in the broader service, but have the single question whether, under reasonable construction, the voluntary election not to do so operates to discharge its members altogether from federal obligations of military service.

It is a familiar principle that rules of strict and literal construction may be departed from in order that absurd results may be avoided, and to the end that a statute shall be effective for the purposes intended.

In order to construe a statute of this character, therefore, there must be an ascertainment of what Congress intended; and such ascertainment is to be made under recognition of the fundamental and essential idea that chief among government purposes is that of so organizing and reorganizing its military force as to adequately safeguard itself and its people against domestic and foreign dangers.

It would seem quite consistent with the contemplated scheme for military strength and defense to hold that the National Defense Act of 1916 was intended to leave it at the election of the members of

the organized state militia, and of the National Guard of the several states, to remain in the service for the full term of their enlistment for purposes of repelling invasion and suppressing insurrection, or to enter upon the broader field for a longer term. And it seems to us that it would be obviously inconsistent with the scheme for national defense and efficiency to hold that the exercise of the right of election by the militiaman, against the broader field and longer term, should operate to absolve him altogether from prior obligations entered into according to then existing laws.

If the exercise of such a supposed right by a single militiaman operates that way, as a consequence it would of course operate that way in respect to the contracts of the militiamen of the organized militia and the National Guard of the several states, throughout the nation, who should elect not to enter upon the broader service; and thus it would result that it would be at the option of the organized militiamen, and the National Guard of the several states, in respect to their prior engagements, to respond to the President's call or not.

If the exercise of the right of option not to enter upon the broader service is attended with the dire consequence that the militiaman is discharged from the obligations of his prior federal engagement, it, in effect, rests entirely with the constituent members of the organized militia, and the National Guard of the several states, themselves to disorganize and disband the organized militia force, with the result that the central government must in the end rely for its military power upon the Regular and Volunteer Army and what is distinctively designated as the National Guard. Under such a view, a very substantial and essential part of the federal government's military power would be bound only by a rope of sand.

To get at the meaning of the National Defense Act of 1916, it becomes necessary to consider somewhat the relative rights of the federal and state governments under the Dick Law, and under prior laws in respect to the federal military arm. This is so, because, if the relations are not altogether revolutionized or stricken down by the National Defense Act of 1916, they define the obligation which the militiaman and the state National Guard man assumed when he became a member of the organized militia or the National Guard of his state, and took the oath then prescribed by law.

There is no occasion to go much into the history of the earlier discussions as to what constitutes the primary militia, as distinct from the organized militia, or much into the earlier controversies as to the power of the President to use the organized state militia as a federal military force, because, as stated by the learned judge of the District Court, and indeed as conceded, unless existing obligations were dissolved by the act of Congress of 1916, the petitioner was bound under his engagement of service to respond to the call of the President and render service when needed to suppress insurrections within the national domain, or to repel invasions.

Article 1, section 8, of the Constitution of the United States declares that Congress shall have power to provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions; and it also empowers Congress to make provision

for organizing and disciplining the militia, and for governing such part thereof as may be employed in the service of the United States.

While the Massachusetts volunteer militia oath contains no express obligation to obey the orders of the President, those who become members of the militia expressly swear that they will faithfully observe and obey the laws and regulations for the government of the volunteer militia of the commonwealth and the orders of all officers elected or appointed over them, and that they will support the Constitution of the United States.

No question being made here against the idea that the organized militia and the National Guard of the states, under laws and obligations existing prior to June 3, 1916, might be invoked by the President as a military force for certain federal purposes within the national domain, we have no occasion to refer to that aspect of government military strength further than to refer to the power as something which had existence as a government force, to be called out by the President through the Governors of states, and used under military orders in such fields as the prior laws and the nature of the engagement for service contemplated.

We now come to a consideration of the provisions of the act of June 3, 1916, which the petitioner particularly urges in support of his contention that the effect of the National Defense Act was to supersede the old and to create a new and widely different military system, and to discharge all federal obligations of such members of the organized militia and of the National Guard of the states as do not enlist for a longer term and broader field of service than that contemplated by the contract of service under prior existing laws and regulations.

The provision upon which the petitioner chiefly relies is that of section 70, and the particular language is that:

"Enlisted men in the National Guard of the several states, territories, and the District of Columbia now serving under enlistment contracts which contain an obligation to defend the Constitution of the United States, and to obey the orders of the President of the United States, shall be recognized as members of the National Guard under the provisions of this act for the unexpired portion of their present enlistment contracts. When any such enlistment does not contain such obligation, the enlisted man shall not be recognized as a member of the National Guard until he shall have signed an enlistment contract and taken and subscribed to the following oath of enlistment."

And the proposed oath provides for a more extended term of service, for allegiance to the United States of America, and the state, and that such enlisted man shall obey the orders of the President of the United States and of the Governor.

It is quite true that section 70 declares, as to members of the National Guard of the several states, whose enlistment and oath do not contain the broader obligation, that they shall not be recognized as members of the National Guard until they have assumed the broader obligation by signing the enlistment contract and taking the oath prescribed; but we look upon this as merely declaratory of the fact that they shall not be recognized and classed in the National Guard, distinctively designated as such, and we do not view such declaration as at all inconsistent with the idea that they shall remain in the class of serv-

ice into which they had in fact previously entered. In short, upon mobilization and under election, not being recognized as members of that body of men known as the National Guard, the militiamen, by operation of law, are relegated to that branch of the service to which they belong, and in which they are bound to perform certain federal military duty.

Viewed in the light of the manifest purpose of the whole scheme of Congress for greater federal military efficiency, saying, if members of the National Guard of the several states shall elect otherwise, that they shall not be recognized as members of a distinct branch of the United States Army, falls far short of saying, or meaning, that a militia organization of a state, so far as federal rights are concerned, may be disbanded under the option of its members, and that federal obligations for service may be altogether rescinded at their free will.

Organized militia existed in Massachusetts, and, being under obligations to respond to an emergency call of the President, when mobilized, was subject to regulations established by Congress under the express provisions of the federal Constitution in respect to organization and discipline, and, of course, reorganization.

Under the theory of ample federal constitutional power, through Congress, to organize, reorganize, and discipline the organized militia of the states, and upon the theory of adequate means of segregation under the provisions of the National Defense Act of June 3, 1916, through military orders, there are no obvious reasons for not merging those who voluntarily elect to enter upon the broader and longer service into units of the National Guard for service both within and beyond the national boundaries; and under the same theory we see no reason why those who elect not to enter upon the broader and longer service, but must serve the term for which they enlisted, may not be lawfully merged into designated military units for service in the narrower field contemplated by the original enlistment within the boundaries, and for the purpose of protecting the national borders from invasion and of suppressing insurrection.

Great stress is laid upon section 58 of the act of June 3, 1916, which apparently limits the constituency of the National Guard. It is true that section 58 does declare that the National Guard shall consist of the regularly enlisted militia, armed and equipped as provided by the act of June 3, 1916.

But, we look upon this, however, as intended to establish a particular standard in that branch of the service known as the National Guard, and we think the reasonable theory is that this provision has reference to an intended distinctively classified and standardized branch of the federal service, and that the broader provision of section 1 of the same act creates a larger scope, and has reference to an organization of a wider constituency—that of the Army of the United States, which may consist of other land forces, such as are now or may be hereafter authorized by law, aside from and in addition to the Regular Army, the Volunteer Army, the officers of the Reserve Corps, the enlisted Reserve Corps, and the National Guard.

Thus, under such broad provision, it is obvious that there may well be units of military land forces other than those particularly enumer-

ated, and these land forces may well be the organized militia land forces under federal engagement to help put down insurrections and repel invasions.

Obviously, the National Guard, as distinctively classified and standardized, is intended to be a constituent part of the broader organization known as the Army of the United States; but that being so by no means necessarily carries with it the idea that the organized militia and National Guard of the several states may not be distinctively recognized as military forces to be mobilized under constitutional military orders, regulations, and designations, and, being organized into military units for the unexpired term, may not be utilized for defending the national bounds and for suppressing insurrection within.

The enacting section of the National Defense Act of June 3, 1916, unquestionably contemplates a broad scope for the exercise of power in respect to military organizations and compositions under constitutional limitations. Indeed, it is expressly and clearly declared that the Army of the United States shall consist of certain enumerated branches and such other land forces as are now or may hereafter be authorized by law. Thus, under this section, the United States Army, under its broad creation as a generic organization, may well be composed, as it would seem, not only of the Regular Army, the Volunteer Army, the National Guard, and the other enumerated branches, but such other, and any number, of constituent military suborganizations of land forces not enumerated, as may now or hereafter be authorized by laws not offending the Constitution of the United States or the Constitutions of the states.

We look upon sections 58 and 70 as intended to classify and standardize a particular branch of the national military force, and not as provisions intended to supersede the older system in its entirety, and to relinquish altogether the rights of the federal government in respect to the obligations of members of the organized military forces of the states which may be constitutionally used for certain kinds of national defense.

While the general and expressed object of the statute of 1916 was a more formidable national defense, through greater efficiency and effectiveness of military force, among the unquestionable purposes of classification and standardization of that particular branch of the United States Army distinctively known as the National Guard, was that of creating a status which should become the basis for providing for, and for regulating emoluments, disbursements, and pensions in that branch of the military service, and for caring for widows and orphans.

The act of 1916, being one for national defense, and one for more effectual provisions to that end, and Congress, upon its passage, being under the weight of well-known existing conditions of foreign menace, and in the presence of a recent invasion by an organized military body of armed men from a foreign country, the view is an impossible one that Congress intended to make it optional with the whole, or any substantial part, of the organized military force of the states, under obligation to aid the federal government in repelling invasion and suppressing insurrection, to march or not, at will, in furtherance of the duty

which they had previously assumed, and for which they had been maintained in part by the government making the emergency call for help.

The President's communication of June 18, 1916, to Governor McCall, invoking military aid, was based upon the possibility of further aggression upon the territory of the United States, and it is quite apparent that both the President and the Secretary of War had in mind conditions which might necessitate reorganizations and subdivisions of the militia force, because, in the call upon the Massachusetts executive for military aid, it was expressly set forth, among other things, that, if "tactical divisions are later organized," requisite and additional staff officers, with rank as prescribed, will be called into service.

While debates upon a pending legislative bill have considerable potency upon questions of legislative intent, individual expression does not necessarily mean an expression of the intent and understanding of the legislative body. It is true that some of the expressions in the colloquial debate, upon the bill in question, between Mr. Hill and Mr. Hay, have a tendency to sustain the view urged by the petitioner in respect to the intention of Congress; but the colloquy ends with a deliberate expression by Mr. Hay that section 22 applies to unorganized militia which in the future may undertake to become organized militia under the provisions of the act.

Such is the view, in substance, which we take of the statute in question, that it keeps out of the National Guard, as distinctively standardized, such members of the militia as do not voluntarily engage for the higher obligations, and that it refers to future organizations and to greater efficiency and effectiveness, rather than to the idea of breaking down existing obligations for service; and it is in this sense that we cannot accept section 61 in respect to the right of states to maintain troops in time of peace as a mandate imposing itself upon organizations, obligations, and rights existing at the time of the passage of the act in question. It is only in the aspect that it has some bearing upon the question of construction that we refer to that section at all.

The argument on the one side that it has reference to existing state organizations, and therefore relieves from obligation, and puts out of service, all members of the militia and of the National Guard of the states not enlisting for the longer term and taking the oath to obey the orders of the President, prescribed by section 70 of the National Defense Act, and the argument of the other side, upon constitutional ground, that, if it means that, its operation would be destructive of the right of the states to maintain troops, raises a question not necessarily pertinent to this case, and one which we need not consider, because, whatever it means, its only weight here is in aid of the interpretation of the scope and meaning of the statute in respect to obligations of service under prior enlistments, and we give it consideration in that respect.

It is our conclusion that the so-called National Defense Act of 1916 was intended to give greater efficiency and effectiveness to the federal military force, through classification and standardization under military regulations and orders based upon existing rights and obligations, rather than one intended to operate to the end that members

of the organized militia, and of the National Guard of the states, who do not see fit to voluntarily enlist for a longer term and assume the broader obligations which might require them to go beyond the national bounds, should be absolved from the duty of responding to the emergency call of the President and the mobilization orders of the Governor in discharge of the obligations into which they had entered, and from the narrower service which they had already assumed under existing laws—that of serving a specified term within the national domain under the lawful orders of the President.

It results, therefore, that when the petitioner had elected not to enlist for the longer term and for the broader service, though not recognized as distinctively a member of the National Guard, that he was still in the service for the federal purposes contemplated at the time he enlisted in the Massachusetts militia and took the oath to obey all laws and regulations for the government of the volunteer militia of the commonwealth, to obey the orders of all officers, and support the Constitution of the United States.

The petitioner being in service for such federal purposes, he was not entitled to be discharged upon habeas corpus.

The order of the District Court is vacated, with directions that the petitioner be returned to the military custody from which he was taken.

PUTNAM, Circuit Judge (dissenting). It seems to me that the act of June 3, 1916, is too positive and precise to be modified by construction in the manner attempted by the opinion of the court, and I therefore conclude that the decrees and orders of the District Court should be affirmed, and dissent to that extent from the opinion of the court in this case.

Appeal from the District Court of the United States for the District of Massachusetts; Frederick Dodge, Judge.

