*Municipal Court of the City of Boston*

No. 499722

**SIDNEY H. WEINER**

v.

**CITY OF BOSTON**

(March 18 — May 10, 1960)

*Present:* Adlow, C. J., Riley & Lewiton, JJ.

Case tried to *Morrissey, J.*

*Adlow, C. J.* Action of contract to recover accrued retirement contributions from the City of Boston.

In September, 1925, Sidney H. Weiner was appointed a part-time physician in the Health Department of the City of Boston. On December 15, 1955 he applied for retirement

as a veteran under the provisions of G. L. c. 32, §58 as amended. To his application for retirement was annexed his certificate of military service. This application was approved by the Retiring Authority on Dec. 22, 1955. The Auditor of the City of Boston has refused to authorize any payments on account of said retirement and bases his refusal on the ground that said Sidney H. Weiner is *not a veteran* within the meaning of the term as defined by our statutes. (G. L. c. 31, §21, as amended by St. 1924, c. 155). It appears from the report that when the plaintiff entered the city service he was listed as a veteran on the civil service eligible list and as such received preference in his original appointment.

At the outset, it is urged by the plaintiff that the Retiring Authority, having ruled that the plaintiff is entitled to the status of a veteran, the question is not now open for this court to consider. We do not agree. The facts on which the plaintiff's rights depend are not in dispute and we are confronted only with an issue of law. For this reason the situation differs from that in *Lenox v. Medford,* 330 Mass. 593, where the court was asked to overrule the decision of a medical board which had made findings with respect to the cause of death of one whose widow was awarded an annuity.

Whether the plaintiff is entitled to enjoy the benefits conferred by law on veterans must depend on the nature of the military services rendered by him. That the

Civil Service Commission at one time listed him as a veteran and gave him preference in appointment will neither add nor detract from his true status.

█ Nor does the fact that an error was originally made preclude correction. There is no vested right in a mistake, and if the City Auditor of Boston discovers that certain public action has been unlawful it is his duty to correct it.

From the report it appears that on Dec. 17, 1917 the plaintiff, while a student at medical school, enlisted as a private in the Enlisted Reserve Corps of the Army of the United States, and that he was honorably discharged from said enlistment on December 23, 1918. He was never on active duty. Did such an enlistment make him a veteran? Under our laws a veteran is defined as one who has served in the Army, Navy, or Marine Corps of the United States in time of war or insurrection and has been honorably discharged from such service or has been discharged from active duty therein. As applied to veterans the term "serve" has been legally construed to embrace the performance of duties growing out of actual enrollment in the Army, Navy, or Marine Corps. Service in war means actual participation in it. This does not mean actual participation in combat, but it does mean being so mustered into the military organization as to be subject to all the responsibilities and duties of a soldier and by the same token being entitled to all the rights, privileges, and emoluments which

service in the military confers. It has been ruled that one who has been drafted into the service and sent to camp and within a few days returned to his home because physically unfit was not a veteran. *Dunn v. Commissioner of Civil Service,* 281 Mass. 376.

The process that transforms a civilian into a soldier involves a complete and important change of status for the individual concerned. It is not encompassed by the mere indication by one that he offers himself into the service of his country. This may be the first step in the process, but it does not constitute an enlistment. Such an offer has no binding effect on either the offeror or offeree. But the offer can ripen into a contract of enlistment thereby changing the status of the offeror. Several steps are indispensible to the achievement of this result. First, the offer must be made to an officer with authority to speak for the government. Second, it must be followed by the process of mustering which embraces examining, equipping and assigning the soldier. *Tyler v. Pomeroy,* 8 Allen 480.

Based on these considerations what was the status of the plaintiff? He was a member of the Enlisted Reserve Corps. This organization was authorized by The National Defense Act of June 3, 1916. (39 Stat. p. 166). §55 of this act provides that:

> "For the purpose of securing an additional reserve of enlisted men for military service with the Engineer . . . and Medical Departments of the Regular Army, an Enlisted Reserve Corps, to consist of such number of enlisted men

of such grade or grades as may be designated by the President from time to time is hereby authorized."

It further provides that enlisted men of the Enlisted Reserve Corps shall receive pay and allowances of their respective grades but only when ordered into active service. In addition it declares that members of the Enlisted Reserve Corps shall not be entitled to retirement or retirement pay or pensions except for physical disability incurred in line of duty "while in active service."

Perhaps nothing sheds greater light on the nature of the organization than that provision of Section 55 which states that in time of actual or threatened hostilities the President may order its members into active service or that upon a call for volunteers members of the Enlisted Reserve Corps may be mustered in as volunteers.

Particularly pertinent to our inquiry is that proviso at the end of §55 which declares that:

"enlisted men in the Enlisted Reserve Corps shall not acquire by virtue of the issuance of certificates of enlistment to them a vested right to be mustered into the volunteer service of the United States."

This specific proviso not only denies this enrollment the character of a full and complete enlistment: it denies one holding such a certificate a right to be enlisted. His status was no different than that of the millions of civilians who constituted the manpower reserve of the United States at the time. The plaintiff was in the same position in a military

sense at the time he enrolled as were the men in the country who were subject to the draft. If his membership in the Enlisted Reserve Corps did have any significance it was to assure his continuance in medical school while subject to call under the draft act. U. S. Statutes 1917, c. 101; 40 U. S. Statutes 397.

Counsel for the plaintiff urges consideration of the fact that the plaintiff took an oath and participated in drills during his membership in the Enlisted Reserve Corps. But the act of Congress which authorized the organization of this corps made no proviso for administering an oath to enrollees. Nor did it prescribe drills or exercises except possibly when called by the President for active duty. In this respect enlistment in the Enlisted Reserve Corps could hardly be compared with that in the National Guard which by law required the oath (National Defense Act of 1916, c. 134, §§70-71) and which by the nature of the enlistment compelled service in the armed forces. *Sweetser v. Emerson,* 236 Fed. 161.

It must be apparent from the above that the Enlisted Reserve Corps was not a constituted element of our armed forces. In our opinion the plaintiff never lost his civilian character. The certificate indicating enrollment in the Enlisted Reserve Corps which was filed by him did not suffice to qualify him as a veteran.

*Report dismissed.*

Lewiton, J. concurring:

I concur in the order for dismissal of the report in this case. However, I would rest the decision on what I deem to be the correct interpretation of the statute under which the plaintiff purported to have been retired, rather than on any technical question as to whether the plaintiff had ever been "mustered" into the Army of the United States, or was to any degree subject to military law or orders.

The plaintiff's rights, if any, to retirement as a veteran, derive from G. L. (Ter. Ed.) c. 32, in §1 of which the term "veteran" is defined, so far as here material, as "any person who has *served* in the army . . . of the United in our general pension laws by the St. 1945, States . . . in time of war . . ." (emphasis c. 658. While the word "served" as used therein, does not appear to have been construed in any reported decision, it was construed in *Dunn v. Commission of Civil Service,* 281 Mass. 376, cited in the foregoing opinion of Chief Justice Adlow. That case involved the interpretation of a substantially identical definition of the word "veteran" so far as here material, as appearing in a civil service veterans' preference statute. The Supreme Judicial Court held that the word "served", in that context, must be construed to involve *performance of services* in the army or other designated military organization of the United States. It pointed out that the beneficiary of such statutes conferring special benefits on veterans "has been the man

who 'served', not merely one who has been 'mustered in' or 'inducted' " (281 Mass. 376, 380-1).

This judicial interpretation in the *Dunn* case had stood unchallenged for 12 years when the Legislature enacted identical language in its newly inserted definition of "veteran" in the pension statute, in 1945. In my opinion, the reasoning of the *Dunn* case as to the construction to be given to the word "served" is equally applicable here. The fact that the legislature provided by St. 1954, c. 627 (not applicable to persons in the employ of the defendant immediately prior to its effective date, (see St. 1955, c. 708), that at least ninety days' active service would be required in order to qualify an applicant as a "veteran" for purposes of retirement or civil service preference does not, as the plaintiff argues, necessarily indicate that no active duty requirement was involved in the earlier statutes. The later enactment is entirely consistent with the view that the earlier statutory requirements in this respect was satisfied by any quantum of active duty, whereas thereafter, the required minimum would be at least 90 days.

Since it affirmatively appears from the retirement records and the report as a whole that the plaintiff here did not render any service, in the sense herein discussed, to the army of the United States, it follows that his purported retirement on a pension was patently invalid, and imposed no obligation on the defendant city.

Alfred Sigel of Boston, for the plaintiff.

William L. Baxter and William H. Kerr, of Boston, for the defendant.