CAMUNAS et al. v. NEW YORK & P. R. S. S. CO.

(Circuit Court of Appeals, First Circuit. June 3, 1919.)

No. 1369.

1. COURTS ⨀262(1)—JURISDICTION OF FEDERAL COURT—CONSTRUCTION OF PORTO RICO STATUTE.

While it is undesirable for a Porto Rico statute to be first construed in a federal court, plaintiff cannot be refused equitable relief on that ground alone.

2. TERRITORIES ⨀32—SUITS AGAINST—PORTO RICO.

A suit to restrain the Porto Rican Workmen's Relief Commission from requiring plaintiff employer to make reports or pay premiums to it may be maintained against the objection that the suit is really against the people of Porto Rico.

3. INJUNCTION ⨀74—IRREPARABLE DAMAGE—WORKMEN'S COMPENSATION.

An injunction to restrain the Porto Rican Workmen's Relief Commission from requiring plaintiff to furnish reports and pay premium taxes to the commission will be denied, upon the ground that compliance will cause plaintiff no irreparable injury, since the premiums may be paid under protest and recovered, pursuant to Act March 9, 1911.

4. TAXATION ⨀607—RESTRAINING COLLECTION.

An injunction against the collection of taxes will be issued only in a very plain case.

5. STATUTES ⨀207—CONSTRUCTION—INCONSISTENT PROVISIONS.

Inconsistent provisions in a statute must be reconciled, if possible, by determining the legislative intent from the act as a whole, construed under the circumstances surrounding the Legislature at the time of its enactment.

6. STATUTES ⨀207—CONSTRUCTION—CONTRADICTORY WORDS.

Words apparently inserted through inadvertence, which would destroy the obvious purpose of the statute, work injustice, or contradict other provisions of the act, will be rejected, as controlled by the general purpose and by other provisions otherwise impossible of fair interpretation and application.

7. STATUTES ⨀184—CONSTRUCTION—REMEDIAL STATUTES.

Remedial statutes will be liberally construed, to give effect to the humane purpose of the Legislature.

8. MASTER AND SERVANT ⨀351—PORTO RICO WORKMEN'S COMPENSATION ACT —ELECTION BY EMPLOYER.

The Porto Rico Workmen's Accident and Compensation Act of February 25, 1918, which is obligatory upon employés and makes the public treasury liable to them for compensation, etc., held also compulsory as to employers.

⨀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Porto Rico; Hamilton, Judge.

Suit by the New York & Porto Rico Steamship Company against Manuel Camunas and others. Decree for plaintiff, and defendants appeal. Reversed and remanded, with directions to dismiss the bill.

Edward S. Bailey, of Washington, D. C. (Howard L. Kern, of San Juan, Porto Rico, on the brief), for appellants.

Charles Hartzell, of San Juan, Porto Rico (Henry G. Molina, of San Juan, Porto Rico, on the brief), for appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and ALDRICH, District Judge.

ANDERSON, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the District of Porto Rico, granting a permanent injunction restraining appellants, who constitute the Workmen's Relief Commission created by the act of the Legislature of Porto Rico approved February 25, 1918, known as the "Workmen's Accident and Compensation Act," from requiring the plaintiff below to file any statement or report as provided in said act, and from assessing any quota or premium to be paid by plaintiff into the Workmen's relief trust fund created by said act, or in any manner enforcing any orders against the complainant, and also restraining the defendant, Benedicto, as treasurer of Porto Rico, from attaching any of the plaintiff's property or otherwise proceeding against the plaintiff for the recovery of the insurance premium assessed against the plaintiff under the terms of the Workmen's Compensation Act.

The plaintiff is a New York corporation, and the amount in controversy is alleged to exceed $3,000. The jurisdiction rests on diverse citizenship.

The bill was filed September 13, 1918. The plaintiff is a common carrier of freight and passengers between Porto Porto and the United States, and operates a pier in the harbor of San Juan, where it employs approximately 75 laborers, besides a number of other laborers in various other ports of Porto Rico.

The bill alleges that the defendants under the provisions of the act required the plaintiff to file certain statements under oath showing the number of its workmen and the amount of wages paid them during the fiscal year ending June 30, 1918; that the plaintiff, in order to avoid criminal proceedings, filed said statements, but protested that it did not accept the benefits of the act, and was therefore neither required to file such statements nor to contribute to the fund referred to in section 28 of said act; that the defendants fixed the plaintiff's annual quota under the act at the sum of $7,639.68; that the defendant Benedicto, as treasurer of Porto Rico, claiming to act under the authority of said act, notified the plaintiff to pay one-half of said sum, otherwise attachment proceedings would be instituted against the plaintiff and its property for the collection of said sum, with interest at 1 per cent. monthly and costs.

That section 28 of the act provides as follows:

"That all employers accepting the benefits of this act and employing laborers under the conditions specified in this act shall contribute to the Workmen's Relief Trust Fund in the form and manner provided herein."

That in consequence of plaintiff's election not to accept the benefits of said act the plaintiff was not liable for said payment, and ought not to be required by the defendants to file any of the statements, reports, or other documents referred to in said act; that the acts of the defendants in requiring the plaintiff file such statements and reports and to make such payments were unwarranted and illegal, and caused irreparable damage to the plaintiff, for which it had no adequate and complete remedy at law. The prayer is that the defendants be enjoined generally from enforcing the act as against the plaintiff. The bill is supported by affidavits. The defendants appeared specially and moved to dismiss, on the ground that the suit was in reality against the people of Porto Rico, and that the people of Porto Rico had not consented to be sued; that the court was therefore without jurisdiction. This motion was denied. The parties agreed in open court that, if the court should rule against the motion to dismiss, the case should be considered as submitted on the merits, the facts to be taken as set forth in the bill. On September 19, 1918, the court sustained the plaintiff's contentions, and on September 24, 1918, a final decree was entered, permanently enjoining the defendants from enforcing the act in any particular as against this plaintiff.

The appellants' 15 assignments of error and their arguments raise not only the question of jurisdiction set up in the motion denied, but attack broadly the court's decision, claiming, inter alia, that the plaintiffs have a full, adequate, and complete remedy at law, and also that the Workmen's Compensation Act is not elective, but compulsory.

No question arises under the Constitution or laws of the United States, or under the Organic Act of Porto Rico. The equity jurisdiction asserted is based on diverse citizenship, and upon the claim that acts and threatened acts of interference with the plaintiff's property will do it irreparable damage. The District Court as a court of equity simply enjoined the defendants as officials of Porto Rico from acting pursuant to what the District Court held was an erroneous construction of the Porto Rico statute.

The gist of the District Court's decision was that the Porto Rican Legislature had enacted an elective and not a compulsory, Workmen's Compensation Act, so far as employers are concerned, and that therefore the Porto Rican officials should be enjoined from enforcing the act as against a rejecting employer.

In considering the problems thus presented, it is desirable to have in mind the legislative and constitutional status of compulsory Workmen's Compensation Acts when this act was passed. It is a matter of general knowledge that for many years courts, lawyers, and legislators were divided in their opinion as to the constitutionality of compulsory Workmen's Compensation Acts. See Ives v. So. Buffalo Railroad Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156; Jensen v. So. Pacific Co., 215 N. Y. 514, 109 N. E. 600, L. R. A.

1916A, 403, Ann. Cas. 1916B, 276; and cases and authorities therein cited; State v. Clausen, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; State v. Mountain Timber Co., 75 Wash. 581, 135 Pac. 645, L. R. A. 1917D, 10.

This question finally reached the Supreme Court of the United States in the two cases of New York Central R. R. Co. v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; and Mountain Timber Co. v. Washington, 243 U. S. 219, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642, where they were originally argued on February 29 and March 1 and 2, 1916. They were reargued on January 30 and February 1, 1917, and decided on March 6, 1917. The decision was in favor of the constitutionality of compulsory Workmen's Compensation Acts.

Turning now to analogous legislation in Porto Rico: We find that by the act of April 13, 1916 (Laws of Porto Rico 1916, Act No. 19, p. 51), "An act providing for the relief of such workmen as may be injured, or of the dependent families of those who may lose their lives while engaged in trades or occupations, and for other purposes," the Porto Rican Legislature had provided for an elective compensation act. Section 23 is as follows:

"Sec. 23.—*Election by Employer.* This act, except the section relating to defenses (section 25), shall apply to all employers or, as provided in section 4 of this act, unless prior to the injury they shall have rejected the benefits of this act in the manner hereinafter provided.

"The rejection by the employer of the benefits of this act shall be signified by filing with the Workmen's Relief Commission a written statement expressing such election. The said statement must be filed by the employer on or before the fifteenth day of June, 1916, and on or before the thirtieth day of April of each succeeding year.

"It shall be the duty of the Workmen's Relief Commission to keep official records showing all refusals made by employers."

Section 24 is headed "Election by Employés," and provides an elaborate plan for signifying such election and the results thereof. Section 25 deals with "defenses abolished in case employer rejects the benefits of this act," and cuts off from such employer the defenses of contributory negligence, fellow servant, assumption of risk, and negligence of an uninsured independent contractor or subcontractor.

This act was amended in 1917 (Laws of Porto Rico, 1917, No. 9, approved April 12, 1917), by an act entitled "An act to amend an act entitled 'An act providing for the relief of such workmen as may be injured, or the dependent families of those who may lose their lives, while engaged in trades or occupations and for other purposes,' approved April 13, 1916."

This act simply amends sections 3, 4, 10, 13, 14, and 23 of the act of 1916. The amended section 23 is entitled "Election by Employer" and contains explicit provisions for such election to be made in writing. Section 24 of the act of 1916, providing for "Election by Employés," is left unchanged.

Under section 1 of the act of 1916, which is left unchanged by the amendment of 1917, a trust fund is created, starting with an appropriation of $25,000 from the treasury of Porto Rico, and thereafter

based upon insurance premiums levied upon employers who do not elect to reject the benefits of the act by filing with the Workmen's Relief Commission a written statement expressing such election.

But the next Porto Rican Legislature that convened after the Supreme Court of the United States had in the above-cited cases held compulsory Compensation Acts constitutional, passed the act in question of February 25, 1918. This is a new act. By section 32 all laws and parts of laws in conflict therewith are repealed. It does not purport to be an amendment of the old acts. Its title is as follows:

"An act to promote the welfare of the inhabitants of Porto Rico in regard to accidents causing death or injuries to workmen while engaged in their work; establishing the duty of employers to compensate their employés or heirs, as defined in this act, for injuries or death irrespective of negligence, and to provide ways and means for the enforcement of this duty; creating an insurance fund to secure employers against such liability and providing for the management and regulation of such insurance; creating a Workmen's Relief Commission and determining its powers and duties; establishing the liability of the people of Porto Rico with regard to their laborers for injuries or death of such laborers in works performed by administration and for other purposes."

In this title the words "the duty of employers to compensate their employés," etc., are not without significance. Section 2 of this act provides that it shall apply to laborers injured, disabled, or killed by accident occurring while engaged in their work. "This act shall not apply to any employer who regularly employs less than three laborers." Exclusio unius, inclusio alterius. This section is obviously of general application to all employés except the few excluded classes. This section also authorizes the Workmen's Relief Commission to pay compensation pursuant to the terms of the act, "drawing from the trust fund belonging to the government" the necessary sums. "The sums so paid need not be reimbursed to the people of Porto Rico out of the fund created by this act." This reference to the fund "belonging to the government," and provision that compensation shall be paid without providing for reimbursement, clearly puts the credit of Porto Rico back of the employés' right to compensation. The Porto Rican government has thus assumed the financial burden of paying compensation to the victims of all ordinary industrial accidents.

Section 7 requires "every employer subject to the provisions of this act * * * to report to the Workmen's Relief Commission as soon as possible, within a period of five days from the date of the accident, all injuries suffered by his employés in the course of their employment." The words "subject to the provisions of this act" are given full effect, if applied only to employers employing not less than three laborers. There is nothing in these words indicating an election open generally to all employers. Refusal or neglect of an employer to make such report is punishable by a fine of from $25 to $50.

Section 10 provides for the grouping of occupations, and for levying insurance rates on the estimated pay roll of the employer, considering also the risk of injury. This section is also of general application, and contains no language consistent with the theory that the employer has any option to obey or not to obey its provisions.

Section 11 authorizes the treasurer of Porto Rico to assess and col-

lect "from every employer of workmen subject to this act such annual premiums as the Workmen's Relief Commission shall determine in accordance with the preceding section," etc. Here again the words "subject to this act" are given full operation if referred back to the exception in section 2 of employers employing less than three laborers.

From the foregoing it will be observed that sections 7, 10, and 11 require all employers except those employing less than three laborers to furnish to the Workmen's Compensation Commission accident reports and data upon which the commission charged with the responsibility of administering the act may not only investigate accidents, and classify industries, but levy and collect from any employer "subject to this act such annual premiums" as it shall determine to be practicable and just. These insurance premiums are levied, not merely for the purpose of reimbursing the government, which under section 2 is made primarily responsible for the payment of the compensation, but also for the purpose of prorating the cost of industrial accidents equitably among various industries, and incidentally, under the latter part of section 10, penalizing, by high insurance rates, poor or careless management which increases the risk of industrial accidents.

Sections 20 to 22 require careful consideration. They are as follows:

### "Defenses Abolished.

"Section 20.—If any accident occurs to any workman employed by an employer subject to the provisions of this act, who has failed to comply with said provisions relative to the submission of reports and the payment of premiums, the Workmen's Relief Commission is hereby authorized to charge said employer with the amount of such compensation as the commission may authorize to be paid to the injured workman and the treasurer of Porto Rico shall levy and collect said amount in the same manner prescribed for the collection of premiums. When a laborer or his heirs, in accordance with this act, and in the case specified in section 20,[1] and the Workmen's Relief Commission in the cases specified in section 21,[2] institute an action to recover damages from an employer, it shall not be a defense in the favor of the employer—

"(a) That the employé was guilty of contributory negligence;

"(b) That the injury was caused by the negligence of a fellow employé;

"(c) That the employé had assumed the risk of injury;

"(d) That the injury was caused by the negligence of a subcontractor or of an independent contractor, unless the contractor or independent subcontractor shall have been insured in accordance with the provisions of this act.

"No contract between employer and employé purporting to permit any of said defenses shall be valid."

The footnotes state that "section 20" reads in the Spanish text 21, and that "section 21" reads in the Spanish text 22. We treat section 20 as so reading; otherwise it is senseless. Sections 21 and 22 are as follows:

### "Injuries by Willful Act or Gross Negligence of Employer.

"Sec. 21.—Nothing in this act contained shall be interpreted as depriving the injured workman, or his heirs, in accordance with this act, in case of death, of waiving the provisions of this act at any time prior to receiving compensation under this act and to claim and recover damages from his employer, in accordance with the provisions of the law before this act takes effect, when the injuries sustained by the said workman were caused by the illegal act or gross negligence of his employer; provided, that only in case of waiver shall

the workmen comprised in this act, or their heirs in accordance with the same, have the right to institute an action for damages against the employer.

"Liability of Third Persons.

"Sec. 22.—When the injury for which workmen are entitled to compensation under this act shall have been sustained under circumstances creating a liability against some other person or against the employer where the injury was caused by his illegal act or gross negligence or by defects in the machinery or implements and when the workman or his heirs receive compensation under this act, the Workmen's Relief Commission shall be subrogated to the rights of the injured workman or his heirs and may prosecute an action and recover damages from such third person or such employer liable for such injury, which damages when recovered shall be covered into the Workmen's Relief Trust Fund for the benefit of the particular group in which the injured workman's occupation was classified."

The effect of these three sections will be most conveniently considered by taking them in reverse order:

Section 22 (called section 21 in section 20) obviously has no bearing upon the present question of rights of action, in the ordinary case of industrial accident, remaining open to the employé. It refers merely to the right of the Workmen's Relief Commission against third persons and to be subrogated to the rights of the injured workman, in cases of gross negligence or of illegal act, when the victim of the accident has exercised his right of election to take compensation.

The proviso at the end of section 21 is significant. It reads:

"Provided, that only in case of waiver shall the workman (sic) comprised in the act, or their heirs in accordance with the same, have the right to institute an action for damages against the employer."

Manifestly this proviso is here inserted in order to make it entirely clear that the right of waiver referred to in the earlier part of section 21 is to be strictly limited to cases of illegal act or gross negligence, and that, except in such cases, all rights of action under the old law are intended to be taken away from the victims of industrial accidents.

The first part of section 21 gives to the victim of an accident caused by the illegal act or gross negligence of his employer an option either to receive compensation under the act or to recover damages. If the victim elects to recover damages, then under section 20 the employer is cut off from the defenses of contributory negligence, fellow servant, etc.

The right of waiver referred to in section 20 is thus strictly limited to cases of accidents caused by illegal act or gross negligence. In the ordinary case of industrial accident the victim has no option whatsoever. He must find his remedy under the act or he is remediless, for the proviso at the end of section 21 makes it clear that all his old rights of action are cut off.

It is thus apparent that the act of 1918 is, as to all employés, excepting only the classes specifically excluded under section 2 and the victims of accidents caused by illegal acts or gross negligence given an option under section 21, compulsory. All rights of action against employers existing under the old law are, as to the great mass of victims of industrial accidents, taken away. Whatever the right of employers to elect, employés are limited to such remedies as the new act affords

for compensation under the plan provided; and this compensation is to be paid from the treasury of Porto Rico. The great mass of victims of ordinary industrial accidents in Porto Rico are thus cut off by this act from their former rights against their employers, and are given in lieu thereof a right to claim compensation from the public treasury.

The first sentence of section 20 also shows that no failure of employers to pay their quota was intended to affect the right of employés under the new act. It provides:

"If any accident occurs to any workman employed by an employer subject to the provisions of this act, who has failed to comply with said provisions relative to the submission of reports and the payment of premiums, the Workmen's Relief Commission is hereby authorized to charge said employer with the amount of such compensation as the commission may authorize to be paid to the injured workman and the treasurer of Porto Rico shall levy and collect said amount in the same manner prescribed for the collection of premiums."

This means that failure of an employer to comply with any of the earlier parts of the act is not to be allowed to affect the right of his employé to compensation and payment thereof from the treasury of Porto Rico. The recalcitrant employer who has failed to pay the premiums provided in section 11 is, under the quoted provision, to be held to respond for the specific amount of compensation awarded his injured employé. The words "who has failed to comply with said provision" do not import the exercise of a right; they import nonperformance of a duty. Nothing in this section implies that such employer is by such failure to be exempt from the penal provisions, both civil and criminal, attached by section 11 to such noncompliance. This provision is entirely inconsistent with the theory of the court below that the employer has a right of election; it simply provides for the rights of his injured employé pending the employer's being compelled to do his duty.

We have, then, a plan for dealing with the great mass of industrial accidents which makes the treasury of Porto Rico primarily responsible for payment of compensation to the injured employés. The employés and their dependents, except the comparatively few in the excluded classes, are cut off from all their former rights against their employers, and must look to the treasury of Porto Rico as their only source of relief in case of accident causing injury or death. The treasury must pay, whether it succeeds or not in obtaining reimbursement from the employers whose former liabilities have thus been thrown upon the government. The employés have no option, even if their employers have. The treasury has no option.

There is no discussion in the opinion of the District Court as to the plight of the Porto Rican treasury resulting from that court's enjoining the Workmen's Relief Commission from assessing premiums as contemplated by the act. Nor was any consideration apparently given to the fact that the act holds forth no election to employés.

Compare Mountain Timber Co. v. Washington, 243 U. S. 219, 234, 37 Sup. Ct. 260, 263, 61 L. Ed. 685, Ann. Cas. 1917D, 642, where Mr. Justice Pitney said:

"While plaintiff in error is an employer, and cannot succeed without showing that its constitutional rights as employer are infringed (Plymouth Coal

Co. v. Pennsylvania, 232 U. S. 531, 544 [34 Sup. Ct. 359, 58 L. Ed. 713]; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 576 [35 Sup. Ct. 167, 59 L. Ed. 364]), yet it is evident that the employer's exemption from liability to private action is an essential part of the legislative scheme and the quid pro quo for the burdens imposed upon him, so that if the act is not valid as against employés it is not valid as against employers."

The whole difficulty arises out of section 28, which is as follows:

"That all employers accepting the benefits of this act and employing laborers under the conditions specified in this act shall contribute to the 'workmen's relief trust fund' in the form and manner provided herein."

Upon these words, "accepting the benefits of this act," the District Court's decision entirely turns. Upon these words alone the court grounded its opinion that the act was, as to employers, elective throughout; that, without acceptance, the employer owed no duty arising under this act.

[1] While it is manifestly undesirable that a Porto Rican statute should receive its first judicial construction in the federal court, we may not, on that ground alone, refuse the plaintiff relief, if otherwise clearly entitled thereto. Compare Kuhn v. Fairmont, 215 U. S. 349, 357, 358, 30 Sup. Ct. 140, 54 L. Ed. 228; Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359; Mich. C. R. R. v. Powers, 201 U. S. 245, 291, 26 Sup. Ct. 459, 50 L. Ed. 744; Coulter v. L. & N. R. R., 196 U. S. 599, 609, 25 Sup. Ct. 342, 49 L. Ed. 615; Pelton v. Bank, 101 U. S. 143, 25 L. Ed. 901.

[2] The appellant strenuously urges that the action is in effect against the people of Porto Rico, and that the court is therefore without jurisdiction; Porto Rico having rights of sovereignty similar to those accruing to the states under the Eleventh Amendment of the Constitution. Porto Rico v. Rosaly, 227 U. S. 270, 33 Sup. Ct. 352, 57 L. Ed. 507.

Assuming that for present purposes Porto Rico is to be treated as though a state of the Union, the question thus presented is a close and difficult one. The situation is in many respects like that presented in the case of Lankford v. Platte Iron Works, 235 U. S. 461, 35 Sup. Ct. 173, 59 L. Ed. 316, in which five of the justices of the Supreme Court were of the opinion that an action by a depositor in an insolvent bank to enforce the provisions of the Oklahoma Depositors' Guaranty Fund Act was a suit against the state, and therefore could not be maintained. Four of the justices were of the opposite opinion. In that case the suit was against the state officials to compel them to perform an alleged duty, the result of which would have been to take money out of the fund, title to which was vested in the state. In the present case, the suit is against Porto Rican officials to prevent them from enforcing payments from the plaintiff into the treasury of Porto Rico. In both cases the financial status of the treasury of the state (treating Porto Rico for the moment as a state) is involved.

But if threatened acts of the Porto Rican Workmen's Relief Commission are without warrant in law, and, if not prevented, they will work irreparable injury to the plaintiff, we think the case falls within the principle of Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52

L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, and that the appellants' contention that the suit is really against the people of Porto Rico cannot be sustained. See, also, Greene v. Louisville, etc., R. R., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Philadelphia Co. v. Stimson, 223 U. S. 605, 621, 32 Sup. Ct. 340, 56 L. Ed. 570; Home Telephone & Telegraph Co. v. Los Angeles, 227 U. S. 278, 293, 33 Sup. Ct. 312, 57 L. Ed. 510; Truax v. Raich, 239 U. S. 33, 37, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Hopkins v. Clemson Agricultural College, 221 U. S. 636, 642–644, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243.

[3, 4] The defendants also insist that, assuming the act should be construed as the plaintiff construes it, the plaintiff has a full, adequate, and complete remedy at law; otherwise stated, that the acts of the defendants, even if unwarranted, do not work irreparable damage to the plaintiff.

Plainly, it will do the plaintiff no irreparable damage to comply with all the provisions of the act except the payment of premiums. To make report of its accidents as provided in section 7, to furnish the data required for the grouping of occupations under section 10, made expressly a duty by the provisions of section 13, cannot conceivably work any substantial, much less irreparable, damage to the plaintiff. Without more discussion of this point, it is plain that no injunction should stand against the enforcement, as against the plaintiff, of all the provisions of the act other than those directed to the collection of the insurance premium.

Does the fact that, under section 11, the defendants have taken proceedings to assess and collect, from the plaintiff, a semiannual insurance premium of $3,819.84, work irreparable damage to the plaintiff, assuming this threatened assessment and attachment to be illegal? Such premiums are to be collected "in accordance with the law and procedure which is at present or which may hereafter be in force for the collection of unpaid property taxes." If not strictly a tax, these insurance premiums are, both in their relation to the Porto Rican treasury as well as in their manner of assessment and collection, closely analogous to taxes.

Certainly it would be difficult to hold that these insurance premiums are not "revenue due the government of Porto Rico." Now, by the Porto Rican act of March 9, 1911, entitled "An act to provide for the payment of taxes under protest," there is a plain and explicit remedy provided for the recovery of taxes and revenue illegally collected. That statute is as follows:

"Section 1. That in all cases in which an officer charged by law with the collection of revenue due the government of Porto Rico, shall institute any proceeding or take any steps for the collection of the same, alleged or claimed by such officer to be due from any person, the party against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute, pay the same under protest.

"Sec. 2. Be it further enacted that, upon his making such payment, the officer or collector shall pay such revenue into the treasury of Porto Rico, giving notice at the time of the payment to the treasurer that the same was paid under protest.

260 F.—4

"Sec. 3. Be it further enacted that, the party paying said revenue under protest may, at any time within thirty days after making said payment, and not longer thereafter, sue the said treasurer for said sum, for the recovery thereof in the court having competent jurisdiction thereto; and if it be determined that the same was wrongfully collected as not being due from said party to the government, for any reason going to the merits of the same, the court trying the case may certify of record that the same was wrongfully paid, and ought to be refunded, and thereupon the treasurer shall repay the same, which payment shall be made in preference to other claims on the treasury. Either party to said suit shall have the right of appeal to the Supreme Court.

"Sec. 4. Be it further enacted that, there shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally.

"Sec. 5. Be it further enacted that, no writ for the prevention of the collection of any revenue claimed, or to hinder and delay the collection of the same, shall in any wise issue, either supersedeas, prohibition, or any other writ or process whatever; but in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and none other."

We think this statute affords the plaintiff full and adequate relief for any unlawful assessment under the new Workmen's Compensation Act.

It requires no discussion or citation of authorities to show that only a very plain case would warrant a court of equity in issuing an injunction tending to cripple a government in the collection of taxes necessary for its existence and performance of its essential public duties.

In Indiana Manufacturing Co. v. Koehne, 188 U. S. 681, 684, 23 Sup. Ct. 452, 453 (47 L. Ed. 651), the court by Mr. Justice Peckham, said:

"It has long been the settled doctrine of the federal courts that the mere illegality of a tax, or the mere fact that a law upon which the tax is founded is unconstitutional, does not entitle a party to relief by injunction against proceedings under the law; but it must appear that the party has no adequate remedy by the ordinary processes of the law, or that the case falls under some other recognized head of equity jurisdiction, such as multiplicity of suits, irreparable injury, etc. See Cruickshank v. Bidwell, 176 U. S. 73, 80 [20 Sup. Ct. 280, 44 L. Ed. 377], where many of the authorities on this subject are collected in the opinion which was delivered by Mr. Chief Justice Fuller. See, also, Pittsburgh, etc., Railway v. Board of Public Works, 172 U. S. 32 [19 Sup. Ct. 90, 43 L. Ed. 354], where Mr. Justice Gray dealt with the subject quite fully. We must judge the case at bar under the rules laid down by the authorities cited."

In Pittsburgh, etc., Railway v. Board of Public Works, 172 U. S. 32, 19 Sup. Ct. 90, 43 L. Ed. 354, Mr. Justice Gray states the rule as follows:

"The collection of taxes assessed under the authority of a state is not to be restrained by writ of injunction from a court of the United States, unless it clearly appears, not only that the tax is illegal, but that the owner of the property taxed has no adequate remedy by the ordinary processes of the law, and that there are special circumstances bringing the case under some recognized head of equity jurisdiction."

Moreover, in considering the alleged irreparable damage to be done the plaintiff by enforcing payment by it of its insurance premium, it should not be overlooked that the plaintiff gets full consideration for this payment; the government has already assumed the plaintiff's

financial responsibility for industrial accidents. The right of election that the plaintiff really insists upon is not a right to retain responsibility under the old law for accidents suffered by its employés. There is no contention by the plaintiff's counsel, or suggestion in the opinion of the District Court, that the plaintiff, by exercising its alleged right of election, remains liable under the old law to its employés. Apparently it is recognized that financial responsibility for industrial accidents has now been assumed by the treasury of Porto Rico. The plaintiff really therefore, seeks to escape, entirely, liability for industrial accidents. It would unload its entire burden, both under the new and under the old law, upon the treasury of Porto Rico, which of course means upon the general taxpayers or upon other employers who hold different theories of civic duty.

We hold that the court below had no jurisdiction to entertain this suit and to enjoin the enforcement by the defendants as against the plaintiff of the Workmen's Compensation Law.

What we have said above goes upon the assumption that the plaintiff and the District Court were correct in construing section 28 as holding forth an election to the employers to accept or reject the insurance provisions of the act. But if we are in error in holding that even on that assumption plaintiff is not entitled to relief in a court of equity — if it is the duty of the federal court, without previous construction of this act by the local Porto Rican courts, to put its own construction thereon—then we are constrained to reject the interpretation put thereon by the plaintiff and adopted by the District Court.

[5-8] We think that the act construed as a whole, as every act must be, shows that the Legislature intended it to be compulsory upon employers as well as upon employés. It is elementary that, if there are inconsistencies in various provisions of an act, the court must do its best to reconcile them, determining from the act, as a whole, construed under the circumstances surrounding the Legislature at the time of its enactment, the legislative intent. Where the language of a statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory results, the court must ascertain the true meaning, referring to the purpose—the spirit—of the law, not adhering slavishly to the letter thereof. See 36 Cyc. 1106, 1108, and cases cited.

Mr. Justice Field in United States v. Kirby, 7 Wall. 482, 486 (19 L. Ed. 278) states the principle as follows:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language, which would avoid results of this character."

Words apparently inserted through inadvertence, which, if literally construed, would destroy the obvious purpose of the Legislature, work injustice, or create contradictions with other provisions of the act which they regulate, are to be rejected, as controlled by the general purpose and by other provisions otherwise impossible of fair interpretation and application. Holy Trinity Church v. United States, 143

U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; United States v. Babbit, 1 Black, 55, 61, 17 L. Ed. 94; Zouch v. Stowell, Plowd. 366; United States v. Freeman, 3 How. 565, 11 L. Ed. 724; Stewart v. Kahn, 11 Wall. 493, 504, 20 L. Ed. 176; Hawaii v. Mankichi, 190 U. S. 197, 212, 23 Sup. Ct. 787, 47 L. Ed. 1016; Smythe v. Fiske, 23 Wall. 374, 380, 23 L. Ed. 47; 36 Cyc. 1109, and cases cited; Sweetser v. Emerson, 236 Fed. 161, 149 C. C. A. 351, Ann. Cas. 1917B, 244.

Another elementary rule is that remedial statutes are to be liberally construed in order to give effect to the humane purposes of the Legislature.

Applying these well-settled principles to the act in question, we are forced to the conclusion that the words in section 28 "accepting the benefits of this act" furnish no adequate basis for the unjust and contradictory results accruing under the construction contended for by the plaintiff and adopted by the District Court. We find it impossible to believe that the Legislature of Porto Rico intended to give employers an option to accept or reject the provisions of the new compensation act without at the same time affording analogous opportunity to employés. Equally impossible is it to believe that the Legislature intended to impose upon the public treasury liability for compensation paid to the victims of industrial accidents without at the same time providing that the industries in which such accidents occur shall by some uniform and just system reimburse the public treasury for the bulk, if not for all, of the compensation so paid. It would be a strange public policy which would permit this plaintiff or any other employer to elect himself out of all liability for the industrial accidents of his employés, throwing the entire burden of compensation therefor upon the public treasury.

As indicated above, plaintiff's contention, sustained by the District Court, is not that it may elect as between the old law and the new law, or as between the state insurance scheme and paying compensation in accordance with the terms of the act to such of its own employés as suffer industrial accidents; the decree of the District Court provides that the defendant shall be enjoined from "in any manner enforcing any of its orders against the said complainant." As the act cuts employés off from all rights except those accruing under the act, and as the decree of the court below enjoins the defendants from enforcing the act in any particular against the plaintiff, the result, beyond question, is to leave the plaintiff free from all money liability for accidents suffered by its employés.

The facts that this new act was passed at the next session of the Legislature after the Supreme Court of the United States had sustained the constitutionality of compulsory acts; that the title of the act indicates a duty imposed generally upon employers; that the old act, which contained in repeated and explicit form provisions for the exercise of election both by employers and employés, was expressly repealed; that the new act follows in general plan the old act, except in the elimination of these express provisions for election; that the new act is plainly compulsory as to all employés (except the clearly excluded classes); that the public treasury is held responsible for

paying compensation provided in the act, and that no adequate resources are provided therefor, except on the theory that the act is compulsory as to employers; that every part of the act except the short isolated phrase in section 28, imports a mandatory duty resting upon employers—these and many other considerations show that the Legislature intended to adopt a consistent, compulsory theory of workmen's compensation, substantially in accordance with the plan adopted in New York and Washington, and sustained by the Supreme Court in New York Central v. White, supra, and Mountain Timber Co. v. Washington, supra.

In the construction we adopt of this act there is far less difficulty than that with which the Supreme Court dealt in Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. The problem in that case was whether the contract labor law applied to the employment of a foreign rector by Trinity Church. The Circuit Court held that it did. 36 Fed. 303. That act provides:

"* * * That it shall be unlawful for any * * * corporation, in any manner whatsoever, to prepay the transportation, or in any way assist or encourage the importation or migration of any alien * * * into the United States * * * under contract or agreement, parol or special, express or implied, * * * to perform labor of service of any kind in the United States. * * *"

In the case of this statute, Trinity Church contracted with Mr. Warren, an alien residing in England, to remove to New York and become its rector and pastor. Yet the Supreme Court held that the act, properly construed, did not apply to this contract.

Mr. Justice Brewer used the following language:

"It must be conceded that the act of the corporation is within the letter of this section, for the relation of rector to his church is one of service, and implies labor on the one side with compensation on the other. Not only are the general words labor and service both used, but also, as it were to guard against any narrow interpretation and emphasize a breadth of meaning, to them is added 'of any kind,' and, further, as noticed by the Circuit Judge in his opinion, the fifth section, which makes specific exceptions, among them professional actors, artists, lecturers, singers, and domestic servants, strengthens the idea that every other kind of labor and service was intended to be reached by the first section. While there is great force to this reasoning, we cannot think Congress intended to denounce with penalties a transaction like that in the present case. It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been aften asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act. As said in Plowden, 205: 'From which cases, it appears that the sages of the law heretofore have construed statutes quite contrary to the letter in some appearance and those statutes which comprehend all things in the letter they have expounded to extend to but some things, and those which generally prohibit all people from doing such an act they have interpreted to permit some people to do it, and those which include every person in the letter, they have adjudged to reach to some persons only, which expositions have always been

founded upon the intent of the Legislature, which they have collected sometimes by considering the cause and necessity of making the act, sometimes by comparing one part of the act with another, and sometimes by foreign circumstances.' ".

Reference may be had to the rest of this opinion for an illuminating discussion of other cases decided by other courts, in which far greater difficulties of sound and consistent construction were met than those presented by the Porto Rican Workmen's Compensation Act.

Compare also Knowlton v. Moore, 178 U. S. 41, 77, 20 Sup. Ct. 747, 761 (44 L. Ed. 969), where the court said:

"We are, therefore, bound to give heed to the rule, that where a particular construction of a statute will occasion great inconvenience or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute."

If we were to construe section 28, standing alone and without reference to its relation to the other clear and explicit provisions in the act, and to the manifest general purpose of the Legislature, we should find difficulty in saying that the Legislature intended to authorize an employer to reject the act. Section 28 provides no method by which an acceptance ôr a rejection shall be signified to the Workmen's Relief Commission. Assuming for the moment a right of election was intended, it would be very strange for a Legislature to provide no machinery for indicating such election. This absence is in striking contrast with the clear and explicit provision in section 23 of the act of 1916, entitled "Election by Employer," and, containing the following language:

"The rejection by the employer of the benefits of this act shall be signified by filing with the Workmen's Relief Commission a written statement expressing such election. The said statement must be filed by the employer on or before the fifteenth day of June, 1916, and on or before the thirtieth day of April of each succeeding year."

At most section 28 grounds but an ambiguous and doubtful implication of a right to elect.

If we were to construe section 28, as did the District Court, as granting to every employer the right to reject, what should we do with the plain and explicit provisions of sections 10 and 11, which contain a plain mandate for levying insurance premiums upon all employers, except the clearly excluded classes?

If we adopt this method of avoiding the alleged difficulty in construing section 28, we create a greater difficulty in construing sections 10 and 11.

Do the words "accepting the benefits of this act" mean anything more than "receiving the benefits" or "entitled to the benefits"? Certainly they do not clearly mean that "only employers who (by some undefined act done at some unnamed time) accept the benefits of this act shall be required to contribute to the trust fund."

Without further elaboration, we regard it as entirely clear that this court is not warranted in so construing this participial clause as to render nugatory other clear and explicit provisions of the act as well as to thwart the obvious dominating legislative purpose.

If there were only reasonable doubt as to whether the Legislature intended this act to be elective or compulsory, a federal court ought not to enjoin its enforcement, particularly when such injunction would or might cripple the public treasury. But, construing the act as a whole and in accordance with the well-settled rules and principles laid down in the cases cited supra, we are unable to believe that there is even reasonable doubt that the Porto Rican Legislature intended to impose, upon employers and employés alike, the compensation theory in substitution for the negligence theory.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to dismiss the bill, with costs; and the appellants recover their costs of appeal.