# PORTO RICAN AMERICAN TOBACCO COMPANY,
## Complainant,

*v.*

## L. SANTIAGO CARMONA, Jose Coll y Vidal, Joaquin A. Becerril, Prudencio Rivera Martinez, and Luis Villaronga, Who are Members of the Workmen's Relief Commission of Porto Rico, and Jose E. Benedicto, Who is Treasurer of Porto Rico, Dfts.

San Juan, Equity, No. 1121

WORKMEN'S RELIEF.

Porto Rico—Without Power to Appoint Commission.

1. A party seeking an injunction against the Workmen's Relief Commission of Porto Rico is entitled to the same because the legislature of Porto Rico lacked the power to create such a commission

Constitutional Law—Previous Decisions on Other Points Immaterial.

2. The fact that the Circuit Court of Appeals at Boston has rendered two decisions upholding the validity of the law creating such Workmen's Relief Commission, does not require this court to dismiss a bill seeking to enjoin action by such Workmen's Relief Commission, where constitutional questions are raised in the present proceeding and were not raised in the former cases.

Constitutional Law—No Injunction until Unconstitutionality Clear.

3. The district judge should hesitate to grant an injunction against the Workmen's Relief Commission upon the ground of the unconstitutionality of the act creating the same until it is clearly established to his satisfaction that the legislature absolutely lacked the power to enact such a measure, and then it becomes equally his duty to grant the injunction.

Opinion filed June 30, 1922.

XII. Porto Rico.—30.

Porto Rican American Tobacco Co. v. Carmona.

*Mr. J. Henri Brown* for complainant.

*Messrs. Salvador Mestre,* Attorney General, and *J. A. Loret,* Assistant Attorney General of Porto Rico, for defendants.

ODLIN, Judge, delivered the following opinion:

This court, in passing upon the motion to dismiss in this important case which has been very ably argued by counsel for the complainant and also by counsel for the defendants, desires to set forth frankly the fact that this court has not overlooked the two decisions of the circuit court of appeals at Boston, one rendered in June, 1919, entitled Camunas v. New York & P. R. S. S. Co. reported in 171 C. C. A. 76, 260 Fed. 40, and the later case decided in March of 1921, entitled Camunas v. Porto Rico R. L. & P. Co. reported in 272 Fed. 924. The fact that in each of these two cases an attack upon the Workmen's Compensation Law of Porto Rico after being successful in this court was reversed at Boston, naturally caused the writer of this opinion to approach the consideration of the present case with very great doubt as to there being any merit therein.

It is furthermore to be noted that the judge who presides over this court in Porto Rico rests under a peculiar burden in passing upon matters involving the validity of local legislative acts, which a judge of a district court sitting in one of the forty-eight states does not incur. In cases like the present one the latter has the advice and assistance of two other judges called to sit with him, and no injunction restraining the action of officers under local statutes can be granted except when three judges sit and hear the same, provided that such local statute is

Porto Rican American Tobacco Co. v. Carmona.

attacked upon the ground of its unconstitutionality. But the circuit court of appeals aforesaid decided in March, 1919, in the case of Benedicto v. West India & P. Teleg. Co. reported in 167 C. C. A. 545, 256 Fed. 417, that inasmuch as Porto Rico is not a state and is geographically separated by the Atlantic ocean from the continental United States, a proceeding of this kind may be properly heard before the judge of this court sitting alone; and in this case the action of the Honorable Peter J. Hamilton, former judge of this court, was distinctly upheld. The writer of this opinion has also been not unmindful of the very plain language used by the Boston court of appeals in the case above referred to, reported in 171 C. C. A. 76, 260 Fed. 40, where the rule is very plainly laid down that an injunction against the collection of taxes should be issued only in a very plain case.

It therefore follows that it is the duty of this court to dismiss this complaint unless the complainant has presented a case so clear that the court can have no doubt as to the relief which the complainant seeks being properly, if not necessarily, awarded to the complainant.

I wish to come first to that part of the argument resting upon the assertion by counsel for the defendants that the bill in this case (which on a motion to dismiss is taken as absolutely true) fails to show that a denial of the injunction will cause the complainant no irreparable injury, because the premiums may be paid under protest and recovered pursuant to an act of the Porto Rican legislature. The experience of the present judge of this court during the thirteen months that he has presided in this Island forces him to take judicial notice of the fact that the officials of the Insular government in Porto Rico, whenever

they obtain moneys paid under protest, fail to preserve the same as a separate trust fund, but proceed to spend the same as needed. The result is that even if such moneys are thereafter held to be recoverable, the party entitled thereto must await an appropriation by the Porto Rican legislature. This is too indefinite and too uncertain to justify this court in regarding the same as, worthy of serious consideration. It might very well happen that cocoanut palm trees would rear their stately heads over the bright green grass of Boston Common and that snow shovels would be needed in the streets of San Juan before the local legislature would have time to pass the necessary remedial statute of reimbursement. In this connection the court has taken into consideration a very important opinion by Mr. Chief Justice Taft rendered as late as May 15 of the present year, in the case of Hill v. Wallace, 259 U. S. 44, 66 L. ed. 822, 42 Sup. Ct. Rep. 453. In this opinion the Chief Justice draws a clear and marked distinction between suits to restrain the collection of Federal taxes and suits to restrain the collection of taxes imposed by a state. It certainly will not be seriously argued that officers acting under the authority of the legislature of Porto Rico would have any greater exemptions than officers acting under the authority of one of the forty-eight states of the Union. It clearly appears that where a question arises as to the validity of a Federal tax and the same is paid under protest, a trust fund arises, and under § 3224 of the United States Revised Statutes no injunction lies against the collection of such tax, except in extraordinary and exceptional cases, mentioned by the Chief Justice as having arisen in the case of Dodge v. Brady, 240 U. S. 122, 60 L. ed. 560, 36 Sup. Ct. Rep. 277. But in this same opinion of the Chief Justice he

refers to the cases in Ex parte Young, 209 U. S. 123, 52 L. ed. 714, 13 L.R.A.(N.S.) 932, 28 Sup. Ct. Rep. 441, 14 Ann. Cas. 764; Ohio Tax Cases, 232 U. S. 576, 58 L. ed. 738, 34 Sup. Ct. Rep. 372; and McFarland v. American Sugar Ref. Co. 241 U. S. 79, 60 L. ed. 899, 36 Sup. Ct. Rep. 498, citing them with approval, coupled with the statement, that, were the act *then* under consideration by the Supreme Court legislation by a *state,* an injunction would certainly issue against such officials.

Referring once more to the two previous decisions of the circuit court of appeals at Boston, above mentioned, in which the decisions of this court granting relief to the New York & P. R. S. S. Co. and to the Porto Rico R. Light & P. Co. were reversed, two observations must be made at the outset. First, that the points then raised are entirely distinct and different from the allegations in the present bill; second, that the Workmen's Compensation Act construed by the court in Boston in the two decisions last referred to is not the same Workmen's Compensation Act which is being enforced in the Island of Porto Rico to-day. There have been some important amendments since the two cases last referred to were heard. Of course it will be conceded that the powers of the legislature of Porto Rico are derived from and rest upon the Act of Congress approved March 2, 1917, being familiarly known in this Island as the Organic Act, the design of which is to provide a civil government for Porto Rico, and for other purposes. §. 13 of this Organic Act creates certain executive departments and they are six in number. § 53 of said Organic Act provides that any bureau or office belonging to any of the regular departments of the government, or hereafter created or not assigned, may be transferred or assigned to any department by the governor, with

the approval of the senate of Porto Rico. Now the functions of this Workmen's Relief Commission are mainly executive. They are certainly not legislative and certainly not judicial. It would perhaps be more accurate to say that their functions are administrative. I can find no provision whatever in any act of the Porto Rican legislature attaching this Workmen's Relief Commission to any of the six executive departments specifically created by Congress under § 13 of the Organic Act. Nor do I find any provision that this Workmen's Relief Commission is made dependent upon any of the said six departments. It is true that there is a provision whereby certain funds must be advanced to the commission by the treasurer of Porto Rico, but there is no provision making this commission subject to the orders of the treasurer, or of attaching this commission to his department.

When we come to § 53, which refers to bureaus or offices belonging to any of the regular departments of the government which may be hereafter created, it is not clear whether this section refers to bureaus or offices which may be created after March 2, 1917, by the Congress of the United States, or to bureaus or offices which may be created after March 2, 1917, by the legislature of Porto Rico. But this § 53 does refer to and provide for a transfer or an assignment of such future bureaus or offices to one of the six executive departments by the governor of the Island with the approval of the Insular senate. It is not argued by counsel for the defendants in the present case that the action contemplated by § 53 has ever been taken.

Now we come to the claim urged by counsel for the complainant that the premiums which had been assessed against the complainant by the defendant commissioners as shown by the bill

Porto Rican American Tobacco Co. v. Carmona.

and supporting affidavits are clearly and grossly excessive, being entirely disproportionate to the service rendered. In the case of D. E. Foote & Co. v. Stanley, 232 U. S. 494, 58 L. ed 698, 34 Sup. Ct. Rep. 377, there was involved the validity of an act of the legislature of Maryland governing the inspection of oysters, and it was distinctly held, that, although the state of Maryland in the exercise of what is known as the police power, did possess beyond question the power to pass certain acts needed to protect its oyster industry and to preserve the health of its own people, yet where the amount of inspection fees are disproportionate to the service rendered the taxes must be declared void as obstructing the freedom of interstate commerce, and the decision of the supreme court of Maryland was reversed. This case is not cited of course upon the theory that there is involved in the present case under consideration any question of interstate commerce but merely as furnishing the highest authority possible with respect to the proper exercise of what is known as the police power. Certainly the legislature of Porto Rico, regardless of the limitations of the Organic Act, possesses no greater latitude of action in the exercise of the police power than is possessed by the legislature of any one of the forty-eight states.

Coming to another case of importance decided by the United States Supreme Court, being that of the Mountain Timber Co. v. Washington, decided in 1917, and reported in 243 U. S. 219, 61 L. ed. 685, 37 Sup. Ct. Rep. 260, Ann. Cas. 1917D, 642, 13 N. C. C. A. 927, while there was involved in that case the validity of the Workmen's Compensation Act enacted by the state of Washington in 1911, and while such act was upheld, it is to be noted that the opinion of Mr. Justice Pitney at page

240 distinctly sets forth that if the tax imposed is "not warranted by any just occasion the least imposition is oppressive." And in this last-mentioned case the question whether the tax or imposition was so clearly excessive as to be a deprivation of property without due process of law, was answered in the negative.

Here in Porto Rico, if the facts set forth in the bill are true (and they must be taken as true upon the motion to dismiss), the premiums imposed by the Commission are shown to be excessive so clearly, after several years of the actual operation of this law, that it seems to me that the constitutional rights of the complainant corporation, as guaranteed to it by the 14th Amendment to the Federal Constitution, are being sacrificed.

Then there is the further question whether § 14 of the Workmen's Compensation Act as now in force is in harmony with the doctrine that parties shall be free to make lawful contracts. The Porto Rico Act attempts to forbid any reduction of wages paid by the employers to the employees to compensate the former for the expense incurred by them in complying with this Workmen's Compensation Act. The language of the majority of the Supreme Court of the United States in the Mountain Timber Co. Case last referred to, at page 246 of the opinion, sets forth the assumption that no construction of one portion of the Washington act will be construed so as to interfere with the right of contract between the employer and the employee. A majority of the Justices of the Supreme Court of the United States distinctly say that if the local act should attempt to make it a misdemeanor for the employer to deduct or retain any part of the premium, to be by him paid to the commissioners, from the wages or earnings of any of his work-

Porto Rican American Tobacco Co. v. Carmona.

men, a serious question will arise as to whether this inhibition, if it were to operate so as to prohibit the employer and the employee from agreeing upon wages, to take into consideration the fact that the employer contributed to the fund, was not an unconstitutional interference with the right of contract. This court is clearly of the opinion that such a condition exists in Porto Rico and that any officer of any corporation is liable to prosecution at any time, provided he sees fit to reduce the wages of an employee on account of his forced contribution to the fund in the hands of the Workmen's Relief Commission.

Another very serious, question arises as to whether it was lawful for the Porto Rican legislature to include in the act now being attacked occupational diseases, and charge employers premiums to cover the same. After examining the decisions of the supreme court of Michigan in the case of Adams v. Acme White Lead & Color Works, reported in 182 Mich. 157, also in L.R.A.1916A, 283, 148 N. W. 485, Ann. Cas. 1916D, 689, 6 N. C. C. A. 482, I am clearly of the opinion that the title to an act providing compensation for accidental injury will not cover a provision of compensation for occupational disease. The opinion of Mr. Justice Stone rendered in 1914 impresses me with the conviction that the present act violates § 34 of the Organic Act, which provides, that, outside of general appropriation bills, no bill shall be passed by the Porto Rican legislature if it contains more than one subject, which subject shall be clearly expressed in its title.

In the case of Crowther v. Fidelity Ins. Trust & S. D. Co. reported in 29 C. C. A. 1, 42 U. S. App. 701, 85 Fed. 41, there is a decision by the judges of the circuit court of appeals for the

fourth circuit in which an act of the Virginia state legislature, passed in 1877, was declared by that Federal court to be violative of the Virginia Constitution, because the title of the act itself did not express the entire object of the act. It certainly will not be seriously contended that the legislature of Porto Rico is less firmly bound by the limitations and restrictions of the act of Congress passed in 1917 than is the legislature of the old state of Virginia by the Constitution of that sovereign state. It therefore seemed to the writer of this opinion that he was bound to hold that the complainant in the instant case is entitled to the relief sought for, even were it to rest alone upon this decision in 85 Federal Reporter.

Mr. District Judge Hanford in 1899 sitting in the Federal court in the state of Washington distinctly held, that, because there was a provision in the Constitution of the state of Washington that no act should ever be revised or amended by mere reference to its title, but the act revised or section amended should be set forth at full length, and the legislature saw fit to pass a statute which was amendatory of a prior statute and referred to this prior statute, which it changed by adding to its provisions but did not repeal, and that this was done in such a manner that the full declaration of the legislative will regarding the subject-matter could be ascertained only by reading both statutes, the later act must be held to be void.

Of course there is a very strong moral argument which has been presented to this court by one of the counsel interested in one of the cases involving the questions, or part of them, covered by this opinion, that any law should be enjoined in any court if it takes $100 of a taxpayer's money and uses $14

Porto Rican American Tobacco Co. v. Carmona.

thereof for the humane purpose set forth in the act itself and uses the other $86 in purposes of administration. There is almost equal force in another moral argument used in the presentation of these cases, that the complainant in the present case and the complainants in other cases of a similar nature pending before this court against the same defendants might easily protect their employees even more fully and even more promptly than under the administration of the present statute, with something like one third or one half of the present expense. But of course this court has no right to take these matters into consideration. If the Porto Rican legislature had power to pass this act, it would be the duty of this court to recognize and enforce such act, regardless of its unwisdom. And this court approached the study of this important question strongly predisposed to uphold the validity of the act which has been attacked, but after considering the arguments of counsel for the complainant and after reading with care and with study the several opinions cited and relied upon by him, it has seemed to me that I would not be fulfilling the duty of this court unless relief were granted, to the extent at least of holding that the bill, if true, entitles the complainant. to the relief which it seeks.

For these reasons, the motion to dismiss is denied, and the counsel for the defendants are allowed until July 31, 1922, in which to file their answer to the bill, serving a copy thereof upon counsel for the complainant.