## JONESBORO CITY v. CAIRO & ST. LOUIS RAILROAD COMPANY & Another.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Submitted January 2d, 1884.—Decided January 21st, 1884.

*Constitutional Law—Illinois—Municipal Bonds—Municipal Corporations.*

1. Under the Constitution of Illinois in force in 1868, an act authorizing a city council to borrow money on the credit of the city, and issue bonds under the seal of the city therefor, did not confer authority to subscribe to the stock of a railroad company, and issue bonds therefor, even when the legal voters of the city at a regular election voted to authorize such subscription : but the want of power could be cured by an act declaring an election theretofore held to be binding, and granting power to issue bonds to pay for a subscription authorized thereat : and such a curative act was within the legislative power, and that power was not taken away by the Constitution of 1870.

2. An act entitled "An Act to amend the charter of the Cairo & St. Louis Railroad Company," which legalized an election previously held in a municipality, at which the people voted to subscribe to the stock of that company and to issue bonds for the payment of the subscription, and which granted authority to issue such bonds, is no violation of that provision in the Constitution of Illinois, which provides that "no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title." Any provision in the title of a bill which calls attention to its subject, although in general terms, is all that is required by the Constitution.

Bill in equity to obtain an injunction against assessing and levying taxes to pay for the principal and interest of bonds issued by a municipal corporation in payment of a subscription to stock in a railroad company.

*Mr. W. S. Day* and *Mr. Sidney Grear* for appellant.

*Mr. George A. Sanders* for Graves, appellee.

Mr. Justice HARLAN delivered the opinion of the court.

This is an appeal from a decree in the Circuit Court of the United States for the Southern District of Illinois, dismissing a bill in equity filed by the city of Jonesboro, in that State,

against the Cairo & St. Louis Railroad Company, an Illinois corporation, the auditor of State, the county clerk and sheriff of Union County, Illinois, and the "Unknown holders of the Jonesboro City bonds, issued in aid of the Cairo & St. Louis Railroad Company." The suit was commenced in one of the courts of the State. Its object was to obtain a decree perpetually enjoining the State and county officers, who were made defendants, from levying, certifying, and extending any tax for the payment either of the principal or interest of said bonds. There was no defence upon the part of those officers, and after publication against the "unknown holders" of the bonds in the mode prescribed by the local statute, a decree *pro confesso* was passed, giving the relief asked, and declaring the bonds invalid as against the city.

Subsequently Luther R. Graves, a citizen of Vermont, presented his petition, in conformity with the State law, alleging his ownership of some of the bonds, and asking that the default be set aside with permission to him to plead, demur, or answer under the orders of the court. The petition was granted, and he was made a party defendant. Thereafter, on his further petition, the cause was removed to the court from whose decree this appeal was taken.

The evidence shows that on the 2d day of March, 1868, a resolution was passed by the city council of Jonesboro submitting to the legal voters of that municipality, at its then next regular election, held April 6th, 1868, the question whether that city should, upon certain named conditions, subscribe $50,000 to the capital stock of the Cairo & St. Louis Railroad Company, payable in bonds within twenty years after date at the option of the city, with interest at the rate of eight per cent. per annum from the date of issue. The election was held at the time indicated.

Subsequently, by an act of the general assembly of Illinois, which became a law on March 3d, 1869, entitled "An Act to amend An act entitled 'An Act to incorporate the Cairo & St. Louis Railroad Company,'" approved February 16th, 1865, authority was given to the several towns, cities, and counties through or near which that railroad might pass, and to the

several townships in said counties which may have adopted, or might thereafter adopt, the township organization, to subscribe for and take stock in the company, or to make a donation in aid of the construction of the road, and issue bonds for such subscriptions or donations, to be paid by taxation upon the property of the municipality issuing them. It was provided that no subscription or donation should be made, nor bonds issued, nor tax levied, unless a majority of the legal voters of the municipality, voting at an election called and held as provided in the act should assent to the subscription or donation. But it was further provided in the same act

" that all elections heretofore had in any county, city, or town in reference to a subscription to said railroad, are hereby declared legal and binding, and the County Court of any county, and the corporate authorities of any city or town in which such elections have been already held, and a majority of the votes cast were for subscription, shall have authority to issue bonds for such an amount as was voted for, notwithstanding any insufficiency, informality, or irregularity in such election or in the notice thereof." Pri. Laws Ill. 1869, vol. 3, pp. 256–7–8.

By an ordinance of the city council of Jonesboro passed July 21st, 1871—which referred to the resolutions of March 2d, 1868, and recited that at the election of April 6th, 1868, all the votes cast favored the subscription—it was enacted that the proposed subscription of $50,000 " be, and is hereby, made upon the conditions specified in said resolutions," and that bonds be issued for the purpose of paying the same. The clerk was directed to have them prepared and delivered to John E. Naill, who by the ordinance was

" appointed agent on behalf of the city to receive from the clerk the said bonds and to deliver the same to the said company, its authorized agent or officer, upon compliance by the said company with the conditions in said resolutions specified, and at the same time to receive from the said company its certificate or certificates of stock (paid up) in said company to an amount equal to the amount of the bonds so delivered, and that he immediately deliver such certificate or certificates to the city council."

Under date of July 1st, 1872, there was executed and delivered to Naill $25,000 of the bonds directed to be issued. They purport to have been issued by the city, were signed by its mayor and countersigned by its treasurer and clerk, and made payable to the railroad company or bearer at the Bank of Commerce in New York. Each one recites that—

"This bond is issued under and by virtue of the charter of said city, and of ordinances passed in pursuance thereof, in payment of so much of the subscription by said city for fifty shares of the capital stock of said Cairo and St. Louis Railroad Company. The proposition to subscribe for said stock having been first submitted, as required by law, to the qualified voters of said city for their approval or rejection, at a special election regularly held for that purpose at the various voting precincts or wards in and of said city, on the 6th day of April, A. D. 1868, and more than two-thirds of said voters having at said election assented thereto, and said majority of voters also being a majority over all the votes cast at the last preceding regular election held in and for said city, and said Cairo and St. Louis Railroad Company having duly performed all the conditions of said subscription to be performed on its part before said bond was to be issued."

On the 13th day of October, 1874, there was filed in the office of the auditor of State the official sworn certificate of the then mayor of Jonesboro (who as clerk had attested the bonds when issued), attested by the city clerk, to the effect that the before-mentioned bonds, amounting to $25,000, were entitled to registration in the office of auditor under the act of April 16th, 1869, entitled "An Act to fund and provide for paying the railroad debts of counties," that they were issued by said city to said railroad company "under and by authority of the provisions of an act of the general assembly of Illinois approved March 3d, 1869, and by a vote of the people of said city at an election held on the 6th day of April, 1868." That certificate concluded :

"And I, as mayor of said city, do hereby certify that all the preliminary conditions in the act in force April 16th, 1869, required to be done to authorize the registration of these bonds, and

to entitle them to the benefits of said act last referred to, have been fully complied with to the best of my knowledge and belief."

On the day that certificate was filed the auditor of State indorsed on each bond that it had been registered in his office pursuant to the provisions of the said act in force April 16th, 1869.

It was stipulated in the cause that the interest on the bonds so issued had been regularly paid by the city from the date of their delivery to the issuing of the injunction by the State court in September, 1882.

1. It is entirely clear that when the vote of April 6th, 1868, was taken, the city of Jonesboro was not authorized by its charter, or by any statute of Illinois, to make a subscription to the capital stock of the Cairo and St. Louis Railroad Company. The power given to its city council " to borrow money on the credit of the city and issue their bonds under the seal of the city therefor," did not, alone, confer authority to subscribe to the stock of a railroad company, and issue bonds in payment thereof. The bonds upon their face showed that they were not issued for an ordinary municipal purpose. *Lewis* v. *Shreveport,* 108 U. S. 282.

2. But the act passed April 15th, 1869, and which became a law on March 3d, 1869, declared legal and binding *all* elections theretofore held in any county, city, or town, in reference to a subscription to the stock of the Cairo and St. Louis Railroad Company, and gave power to the County Court of any county, and the corporate authorities of any city or town in which such elections had already been held, and a majority of the votes cast were for subscription, to issue bonds for the amount voted, " notwithstanding any insufficiency, or informality, or irregularity in such election, or in the notice thereof." The election of April 6th, 1868, was something more than informal or irregular. It was insufficient, in itself, as authority for an issue of bonds. But its insufficiency was removed by the act of 1869, if the general assembly of Illinois had the power to do so. That it had such power cannot well be doubted. It

has been frequently decided by the Supreme Court of that State—and upon that point there has been no disagreement between that learned tribunal and the courts of the Union—that prior to the adoption of the Illinois Constitution of 1870, an incorporated city, its corporate authorities being thereunto authorized by the legislature, could make a subscription to the capital stock of a railroad company, without referring the question of subscription to a popular vote. *Keithsburg* v. *Frick*, 34 Ill. 405, 421; *Quincy, Missouri & Pacific Railroad Company* v. *Morris*, 84 Ib. 410; *Marshall* v. *Silliman*, 61 Ib. 218, 225; *Quincy* v. *Cook*, 107 U. S. 549. The legislature, therefore, could make the election of 1868 legal and binding as an expression of the popular will, and, upon the basis of the election thus legalized, empower or authorize the corporate authorities of the municipality to issue the bonds for the amount indicated by the popular vote.

There is no question here, such as has arisen in some cases in the Supreme Court of Illinois, and in this court, as to the power of the legislature, prior to the adoption of the Constitution of 1870, to compel the corporate authorities of a municipality to issue bonds in aid of the construction of a railroad. While the act of 1869 legalized the election of 1868, it did not require an issue of bonds, but only gave power to the corporate authorities of the municipality to do so; such authorities, in the case of an incorporated city, being, not the voters, but its mayor and council. *Williams* v. *Town of Roberts*, 88 Ill. 11; *Quincy* v. *Cooke, supra.* If the conditions attached to the subscription by popular vote, or by the ordinance of the city council of Jonesboro, had not been complied with when the curative act of 1869 was passed, then the railroad company would not have been entitled to have the bonds issued. This shows that the curative act does not belong to that class which the Supreme Court of the State, has, in some cases, held to be beyond the constitutional power of the legislature to pass.

3. The next question to be considered is whether the Constitution of Illinois adopted in 1870 took from the city of Jonesboro the power thereafter to issue the bonds voted by the

election of 1868 and authorized by the act of 1869. . That instrument declares that

"no county, city, town, township, or other municipality shall ever become subscribers to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation : *Provided, however*, That the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipality prior to such adoption."

We are of opinion that the right of the city to make the subscription in question, and to issue bonds in payment thereof, was saved by the proviso of that section. Before and at the time of the adoption of the Constitution of 1870, the city, by its corporate authorities, had power to subscribe to the stock of this railroad company. Power to that end was conferred by the act of 1869, which was itself based upon a vote of the people of Jonesboro. The vote, when taken, was, it is true, without legal sanction, but it was made effective as an expression of the popular will by the statute subsequently passed and in force before the Constitution of 1870 was adopted. The phrase "under existing laws," in the section of the Constitution referred to, relates, we think, to the time of the adoption of the Constitution rather than to the time when the vote of the people was in fact taken. Looking at the purpose of the proviso in the Constitution of 1870, we cannot suppose that the framers of that instrument intended to make a difference, in the operation of that proviso, between a subscription authorized by a vote legally taken, and a subscription authorized by a vote taken without legislative authority, but subsequently, and before the Constitution went into operation, legalized by a valid act of assembly.

4. But it is insisted that that part of the act of 1869 legalizing the election of 1868 and conferring authority to issue bonds for the amount voted at that election, was in violation of section 23 of article 3 of the Illinois Constitution of 1848, which provides that "no private or local law which may be

passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title." The title of the act is "An Act to amend the charter of the Cairo and St. Louis Railroad Company." The contention is, that the legalization of an election previously held, and at which the people voted in favor of a subscription of stock to that company and the granting of authority to issue bonds in payment of such subscription, is not a subject expressed by the title of the act. In this view we do not concur, and our conclusion is justified by the later decisions of the Supreme Court of Illinois construing a similar provision in the State Constitution of 1870. It was held in *Johnson* v. *People*, 83 Ill. 431, that the Constitution "does not require that the subject of the bill must be specifically and exactly expressed in the title; hence we conclude that any expression in the title which calls attention to the subject of the bill, although in general terms, is all that is required." *People* v. *Lowenthal*, 93 Ill. 191. The authority of municipalities to make subscriptions in aid of the construction of railroads in Illinois has frequently, if not generally, been given in the charters of the respective railroad corporations. Whether a particular municipality has legislative authority for a subscription to the stock of a particular railroad company can be determined, ordinarily, by referring to the charter of that company. The general subject of municipal subscriptions to the stock of this particular company was, therefore, germane to and fairly embraced by the title of the act of 1869. Upon like grounds a provision in the same act legalizing a previous election at which the people voted in favor of a subscription and giving authority to issue bonds for the amount indicated by the popular vote, was sufficiently covered by a title showing that the act in question was amendatory of the original charter of the company; this, because the validity of bonds so issued would depend upon the existence of legislative authority to issue them, and the existence of such authority would ordinarily be ascertained by reference to the charter and amended charter of the railroad corporation. Our decision in *Montclair* v. *Ramsdell*, 107 U. S. 147, expresses substantially the same views, upon this general subject, as those

announced by the Supreme Court of Illinois in *Johnson* v. *People.*

We are of opinion that no error was committed in dismissing the bill, so far as it questioned the authority of the State officers to assess, levy, and extend taxes in payment of the bonds held by the appellee Graves.

The decree is, consequently, affirmed.          *It is so ordered.*