## CAMUNAS et al. v. PORTO RICO RY., LIGHT & POWER CO.

(Circuit Court of Appeals, First Circuit. March 15, 1921.)

No. 1460.

1. **Courts ⬦289—Whether federal Employers' Liability Act prevents application of Porto Rican Workmen's Compensation Act to railroads "arises under United States laws."**

    The question whether the federal Employers' Liability Act (Comp. St. §§ 8657–8665) is in force in Porto Rico, and prevents the application of the Workmen's Compensation Act of Porto Rico to railroads on that island, is one "arising under the laws of the United States," within Judicial Code, § 24 (Comp. St. § 991), defining the jurisdiction of United States District Courts.

2. **Injunction ⬦85(2)—Remedy by suit in Porto Rican court to recover payment of assessment under Workmen's Compensation Law alleged to be invalid is not adequate for one having right to sue in federal courts.**

    Since the remedy by an employer in Porto Rico to recover an assessment under the Workmen's Compensation Act under Porto Rican Act of March, 1911, § 3, is by Act April 13, 1916, § 10, available only in the district courts of the island, that remedy is not adequate for a party having otherwise a right to resort to the federal court, and does not prevent relief by injunction against the wrongful collection of such assessment.

3. **Statutes ⬦55—Porto Rican Workmen's Compensation Act is not ultra vires.**

    Under the Organic Act of Porto Rico March 2, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3803a–3803z), under which Porto Rico is now sovereign and which by section 37 gives the Legislature of Porto Rico substantially the powers of the state Legislatures, and by section 2, provides that nothing in the act shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of the employees, the enactment of the Workmen's Compensation Act was not beyond the power of the Legislature of Porto Rico, especially in view of the fact that section 2 was inserted by Congress to avoid the question of the constitutionality of such a law.

4. **Statutes ⬦55—"Authority" to enact laws for safety of employees includes railroad employees in Porto Rico.**

    The authority in Porto Rican Enabling Act, § 2, to enact laws for the safety of employees includes authority to make such laws applicable to railroad employees on the island, as was expressly done by Porto Rican Workmen's Compensation Act, § 10.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Authority—Authorize.]

5. **Territories ⬦18—Federal Employers' Liability Act has been superseded as to railroads in Porto Rico.**

    The federal Employers' Liability Act (Comp. St. §§ 8657–8665), which originally was applicable to Porto Rico, has been superseded therein by Porto Rican Workmen's Compensation Act, section 10 of which expressly makes the act applicable to railroads, in view of the fact that the reason for legislation affecting interstate carriers does not apply in Porto Rico, and that the Safety Appliance Act, which is an important, if not an essential, part of the Liability Act, was made inapplicable to Porto Rico by Organic Act, § 38 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803oo), and that Congress had not exercised its power under section 34 (section 3803n) of the Organic Act to annul the Workmen's Compensation Act.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Constitutional law ⟐301—Master and servant ⟐347—Porto Rican Work-men's Compensation Act held to give due notice of proceedings.**

The provisions of Porto Rican Workmen's Compensation Act, § 8, requiring a certified copy of the decision of the Workmen's Relief Commission to be served on the employer, and section 9, giving the party aggrieved an appeal to the District Court, where there is a trial de novo on both law and facts, satisfies the requirements of due process of law for notice to the employer.

**7. Master and servant ⟐383—Regulations under Porto Rican Workmen's Compensation Law presumed to give employer notice of premium assessments.**

It is presumed that the Workmen's Relief Commission of Porto Rico has exercised the authority given it by section 6 of the Workmen's Compensation Act to adopt rules and regulations which shall have the force of law, in such manner as to give an employer due notice of proceedings for the assessment of the insurance premium payable under that act, especially in view of the fact that such premium is to be based on information which must be secured from the employers.

**8. Constitutional law ⟐301—Right to recover workmen's compensation premiums paid conforms to due process of law.**

An employer cannot contend that he is deprived of property without due process of law by Workmen's Compensation Act of Porto Rico because he is not given notice before the assessment of insurance premiums against him, since he has the right under Rev. Sts. and Codes of Porto Rico, § 2988 et seq., which are made applicable to insurance premiums by section 11 of the Compensation Act to recover insurance premiums paid under protest.

Appeal from the District Court of the United States for the District of Porto Rico; Peter J. Hamilton, Judge.

Suit by the Porto Rico Railway, Light & Power Company against Manuel Camunas and others for an injunction against the enforcement of the Porto Rican Workmen's Compensation Act. From an order denying a motion to dismiss the bill, and granting an injunction pendente lite, the defendants appeal. Reversed and remanded, with directions to dismiss the bill.

Charles Marvin, of New York City (Salvador Mestre, Atty. Gen., of Porto Rico, of San Juan, P. R., on the brief), for appellants.

Carroll G. Walter, of New York City (Edward J. Patterson, of New York City, and J. Henri Brown, of San Juan, P. R., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The plaintiff (appellee) is a Porto Rican corporation owning and operating steam railroad and electric railway lines in Porto Rico. The defendants (appellants) are Porto Rican officials charged with the duty of administering and enforcing the Workmen's Compensation Act of February 25, 1918.

On August 27, 1919, the plaintiff filed in the court below a bill in equity seeking an injunction against the enforcement of the Compensation Act as against it. The bill alleges the passage of the Compen-

sation Act, describes its administrative machinery, and sets forth: That in section 10 thereof it is expressly provided that:

"All public carriers operating railroads shall be included in this act while carrying on their business in Porto Rico."

That the defendants have assessed yearly insurance premiums upon the plaintiff of $4,560.18, which the plaintiff has refused to pay, being advised that the Compensation Act is void so far as it purports to apply to employees of the plaintiff's railroad and railway because the federal Employers' Liability Act (Comp. St. §§ 8657–8665) is in force in Porto Rico and excludes local legislation upon that subject. That proceedings, civil and criminal, have been threatened by the defendants, or some of them, against the plaintiff and its property. That the Compensation Act is void, not only by reason of conflict with the federal Employers' Liability Act, but because of lack of due process of law, in that it "does not provide for or require notice to complainant and an opportunity to be heard upon claims presented to the Workmen's Relief Commission." That plaintiff has no adequate remedy at law, since, even if it complied with the Compensation Act, and paid the premiums and assessments under protest, it would be left subject to numerous suits brought by employees under the federal Employers' Liability Act, pending the determination of such suit to recover premiums. That one such suit under the Liability Act, to recover for the death of an employee occurring since the Compensation Law went into effect, was already pending.

On December 6, 1919, the defendants moved to dismiss on the following grounds:

(1) Complete and adequate remedy at law.

(2) No irreparable injury nor multiplicity of suits.

(3) The federal Employers' Liability Act not in force in Porto Rico.

(4) Even if the Liability Act is in force, plaintiff is not thereby relieved from obligation to file reports under the Compensation Act and comply with the other provisions of the same.

On December 9, 1919, a supporting affidavit was filed by the plaintiff's president and general manager, setting up that there was then pending in the same court under the federal Employers' Liability Act a suit to recover for the death of one Lopez; that, notwithstanding the pendency of this suit, the Workmen's Relief Commission, without notice to the plaintiff, and without affording it an opportunity to be heard, investigated the death of said Lopez, and fixed the damages to be paid to his widow and children in the sum of $3,500, and that the treasurer of Porto Rico had demanded payment of this sum, and threatened to attach plaintiff's property on failure to pay the same; that, as the court below has held the federal Employers' Liability Act in force in Porto Rico, the plaintiff would thus, by reason of the conflict of jurisdiction, be left subject to large expense in defending suits brought under the Liability Act while compelled to pay premiums and indemnities fixed by the Workmen's Relief Commission under the Compensation Act.

On January 5, 1920, the motion to dismiss was denied, and an injunction pendente lite granted. From this order granting an injunction the defendants appealed.

The decision of the court below rests upon the proposition that the federal Employers' Liability Act is applicable to railroads in Porto Rico, and excludes, ex proprio vigore, the local Workmen's Compensation Act. New York Central R. R. v. Winfield, 244 U. S. 147, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139.

[1] Although the first assignment of error asserts that no federal question is involved, this proposition was abandoned at the argument. Both counsel agree—and we accord with their view—that the question presented is one "arising under the laws of the United States" within the meaning of section 24 of the Judicial Code (Comp. St. § 991).

[2] We think the defendants' contention that the plaintiff has a plain and adequate remedy at law cannot be sustained. The case is, on the facts, easily distinguishable from that of Camunas v. New York & P. R. S. S. Co., 260 Fed. 40, 49, 171 C. C. A. 76. Moreover, the views expressed in that case, to the effect that the employer had a plain and adequate remedy at law for any unlawful assessment under the Workmen's Compensation Act, were grounded upon the language of section 3 of the Porto Rican Act of March 9, 1911, entitled "An act to provide for the payment of taxes under protest," which provides in explicit terms that the party paying under protest may "sue the said treasurer * * * in a court having competent jurisdiction thereto." On the record then before the court there was no reason suggested for construing the words "in a court having competent jurisdiction thereto" as not being broad enough to cover the federal court, if, by reason of diversity of citizenship or other ground for federal jurisdiction, the party alleging wrongful assessment had a right to resort to the federal court. Neither the Act of April 13, 1916, entitled "An act to authorize suits against the people of Porto Rico," nor the decisions of the Supreme Court of Porto Rico in Sauri & Subira v. Sepulveda, 25 P. R. 224, and Union Life Insurance Co. v. Gromer, 20 P. R. 80, were brought to the attention of the court. As it now appears that the Supreme Court of Porto Rico has construed the statute authorizing suits against the treasurer as suits against Porto Rico, and therefore permissible only to the extent authorized by the sovereign power (Porto Rico v. Rosaly, 227 U. S. 270, 33 Sup. Ct. 352, 57 L. Ed. 507), and as under section 10 of the Act of April 13, 1916, it is provided "that all such cases shall be brought only in the insular district courts," it is plain that the remedy for the recovery of taxes, paid under protest, under section 3 of the Act of March 9, 1911, is not an adequate remedy for a party having otherwise a right to resort to the federal court (Smyth v. Ames, 169 U. S. 466, 516, 517, 18 Sup. Ct. 418, 42 L. Ed. 819; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 391, 14 Sup. Ct. 1062, 38 L. Ed. 1031; Benedicto v. Porto Rican American Tobacco Co., 256 Fed. 422, 425, 167 C. C. A. 550, and cases cited).

[3] The main question is whether the Porto Rican Compensation Act is applicable to Porto Rican railroads. As Porto Rico has in explicit terms undertaken to include railroads, the problem is really whether this act is ultra vires the Organic Act. We think it was not. The Organic Act of March 2, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3803a–3803z), vests very broad general powers in Porto Rico. In section 5 Porto Rican citizens are declared to be citizens of the United States. Porto Rico is now sovereign. Porto Rico v. Rosaly, 227 U. S. 270, 33 Sup. Ct. 352, 57 L. Ed. 507.

By section 37, the Legislature is given broad and inclusive powers:

"The legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities so far as may be necessary, and to provide and repeal laws and ordinances therefor; also the power to alter, amend, modify, or repeal any or all laws and ordinances of every character now in force in Porto Rico or municipality or district thereof in so far as such 'alteration, amendment, modification, or repeal may be consistent with the provisions of this act."

Manifestly this grant of power is nearly, perhaps quite, the equivalent of the power of a state Legislature to enact all laws not inconsistent with the federal or the state Constitution. The Organic Act is the practical equivalent of a state Constitution. The fact that it remains subject to amendment or repeal by Congress is for present purposes immaterial. In that regard, Congress stands as to Porto Rico in the place of the people of a state, acting directly or indirectly through a constitutional convention.

By section 58, all inconsistent laws are repealed, and all existing, consistent laws are retained, until the Legislature shall by new and consistent legislation otherwise provide. It reads as follows:

"All laws or parts of law applicable to Porto Rico not in conflict with any of the provisions of this act, including the laws relating to tariffs, customs, and duties on importations into Porto Rico prescribed by the act of Congress entitled 'An act temporarily to provide revenues and a civil government for Porto Rico, and for other purposes,' approved April twelfth, nineteen hundred, are hereby continued in effect, and all laws and parts of laws inconsistent with the provisions of this act are hereby repealed."

That Congress intended the Porto Rican Legislature to have full police powers is apparent, not only from the language of section 37, supra, but expressed in emphatic form in the following provision in section 2—the section containing the Bill of Rights:

"Nothing contained in this act shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of employees."

The circumstances under which this provision was inserted in the Organic Act give it a special significance. When the act was under consideration, the constitutional status of compulsory compensation acts was still doubtful. The act was approved on March 2, 1917, four days before the Supreme Court, in New York Cent. R. R. v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629, and Mountain Timber Co. v. Washington, 243 U. S. 219, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642, settled the

constitutionality of such legislation. Until these decisions were made, there was grave doubt in the minds of judges, lawyers, and legislators whether such acts could be held not obnoxious to the federal Constitution. Compare Camunas v. New York, etc., S. S. Co., 260 Fed. 40, 42, 43, 171 C. C. A. 76.

The above provision in the Bill of Rights of the Organic Act was not in the original draft. It was an amendment inserted on the suggestion of a representative from New York as the result of a discussion concerning the constitutionality of Workmen's Compensation Acts. In New York, in order to meet the difficulties discussed by the courts in the case of Ives v. South Buffalo R. R. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156, an elaborate constitutional amendment had been adopted. The above provision is a copy of a portion of the amendment to the New York Constitution. It is true that the amendment to the New York Constitution is much longer.and more elaborate than the above provision inserted in the Organic Act. But we think it was intended to have the same general effect; that is, to remove all possible doubt that Congress intended to empower the Porto Rican Legislature to pass any Workmen's Compensation Act not inconsistent with the due process provisions of the Organic Act, which are, of course, in general, the equivalent of those in our own Bills of Right. As pointed out in Camunas v. New York, etc., S. S. Co., 260 Fed. 40, 43, 171 C. C. A. 76, the present Porto Rican Compensation Act of February 25, 1918, was promptly enacted after Congress had passed the Organic Act of March 2, 1917, and the Supreme Court had held such legislation constitutional.

[4] We think it plain that "laws for the protection of the lives, health or safety of employees" may include Workmen's Compensation Laws; that the word "employees" means employees in general; that it does not mean "employees, except the employees of Porto Rican Railroads," as the plaintiff's argument would in effect require us to read it. Second Employers' Liability Cases, 223 U. S. 1, 51, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. We can conceive of no reason why Congress should desire to put employees of Porto Rican railroads in a class by themselves so far as remedy for accidents is concerned. Compare People of Porto Rico v. American R. R. Co. of Porto Rico, 254 Fed. 369, 373, 165 C. C. A. 589.

[5] But plaintiff's chief contention is that the federal Employers' Liability Act was in force in Porto Rico; and this is so (American R. R. Co. v. Birch, 224 U. S. 547, 32 Sup. Ct. 603, 56 L. Ed. 879); that Congress has not in terms made it there inapplicable; that it therefore remains in force there: and that the doctrine of New York Central R. R. Co. v. Winfield, 244 U. S. 147, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139, requires a holding that the Porto Rican Compensation Act is void as to railroads. It contends that the decision in the Winfield Case, to the effect that the Liability Act controls in interstate commerce, both inclusively and exclusively, compels a like conclusion as to Porto Rico.

We cannot believe that the doctrine of the Winfield Case has any application to Porto Rico. The decision in that case rests upon the re-

lation between federal and state power over the instruments of interstate commerce. It is, of course, elementary that, under the commerce clause, Congress may, if it chooses, cover the whole field of interstate commerce, just as it may, if it chooses, legislate directly and exclusively for Porto Rico. The question is not of the existence of the power; the question is as to what extent existing power has been exercised. This is purely a question of statutory construction. Out of it arose the differences of opinion between the justices of the Supreme Court in the Winfield Case. Compare 244 U. S. 151, and 244 U. S. 155.

But the considerations as to desirable uniformity in liability for accidents to employees set forth in the congressional reports referred to in the majority opinion (244 U. S. 150), on which the prevailing opinion largely, if not entirely, rests, do not seem to us applicable to the present situation. In the states, interstate commerce arises in connection with the operation of state-chartered railroads, running through many separate and differing jurisdictions. Thus interstate commerce, conducted by state agencies and subject to numerous conflicting laws, is hampered and complicated in intolerable fashion. Hence the need of one inclusive and exclusive rule of liability. But Porto Rico has no interstate commerce—no railroad running out of its charter home into quasi foreign jurisdictions.

Further support is given the view that Congress did not intend to continue the Liability Act operative in Porto Rico by the provision, in section 38 of the Organic Act, that the Interstate Commerce Act and the Safety Appliance Act "shall not apply to Porto Rico." The Safety Appliance Act is an important, if not an essential, part of the Liability Act. It was applicable to Porto Rico. See American R. R. Co. v. Didricksen, 227 U. S. 145, 33 Sup. Ct. 224, 57 L. Ed. 456, where Mr. Justice Lurton commented on its importance in the scheme of the Liability Act, saying:

"It is not easy to see how effect can be given to the Employers' Liability Act of 1908 in Porto Rico, without concluding that this act of 1903 [Safety Appliance Act] is also in force there, since the former, as pointed out in the Birch Case, 224 U. S. 547, 555, provides in its third section 'that no employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death.' The fourth section contains a like provision concerning assumption of risk."

After this decision on January 27, 1913, the Safety Appliance Act was, as to Porto Rico, suspended by the Interstate Commerce Commission, and remained there inoperative until repealed by the Organic Act on March 2, 1917. Plaintiff contends that, notwithstanding this repeal of a part of the Liability Act, the balance still remains in force in Porto Rico. If this is so, it is because the Liability Act, as thus diminished or amended, is not inconsistent either with the Organic Act or with the Compensation Act. If inconsistent with either act, it has been either repealed or superseded.

A majority of the court are of the opinion that the Liability Act and the Compensation Act are inconsistent, and that therefore the Compensation Act is, and the Liability Act is not, applicable to railroads

in Porto Rico. Agreeing fully that the Compensation Act is applicable to Porto Rican railroads and that therefore the decision below should be reversed, it has seemed to the writer that the question of any possible continued applicability of the Liability Act might well be reserved until we have before us some employee claiming rights against his employer under that act; that, technically, the only issue open on this record is whether the enforcement of the Compensation Act should be enjoined; that it is therefore not necessary now to say that (perhaps in connection with sections 20 and 21 of the Compensation Act) no possible case could arise under the Liability Act. But in this view the writer is alone. The decision here is the exact reverse of the decision below, viz. that the Compensation Act excludes the Liability Act.

If any further support were needed for the conclusion reached, it may be found in the fact that it is provided by section 34 of the Organic Act that—

"All laws enacted by the Legislature of Porto Rico shall be reported to the Congress of the United States, as provided in section 23 of this act, which hereby reserves the power and authority to annul the same."

The present Workman's Compensation Act was enacted soon after the decisions of the Supreme Court holding such acts constitutional. As noted above, at the end of section 10 there is an express provision making the act applicable to railroads. Under these circumstances, the presumption of congressional acquiescence obtains. See People of Porto Rico v. American R. R. Co., 254 Fed. 369, 377, 165 C. C. A. 589, and cases cited; Tiaco v. Forbes, 228 U. S. 549, 558, 33 Sup. Ct. 585, 57 L. Ed. 960; Clinton v. Englebrecht, 13 Wall. 434, 446, 20 L. Ed. 659; Camou v. United States, 171 U. S. 277, 287, 18 Sup. Ct. 855, 43 L. Ed. 163.

One other point requires brief consideration. Plaintiff urges that—

"The Workmen's Compensation Act is void, because effecting a taking of property without due process of law, in that it does not provide for notice or an opportunity to be heard."

This contention, as presented, has a double aspect. In paragraph 9 of the bill the allegation is:

"The said Workmen's Accident Compensation Act is invalid because of repugnancy to the due process of law provision of the Constitution and the Organic Law of Porto Rico, in that the law does not provide for or require notice to complainant and an opportuniy to be heard upon claims presented to the Workmen's Relief Commission."

Manifestly this is simply a contention of lack of due process in determining the amount of compensation awarded an employee. There is no allegation in the bill of lack of due process in determining the amount of the insurance premiums assessed against any employer.

But in its brief and argument the plaintiff seems to have abandoned the position taken in the bill, and now urges lack of due process in determining the amount of insurance premiums.

[6] As to the first proposition (set up in the bill) of lack of due notice and hearing as to the amount of compensation to be awarded

an employee: It is enough to note that by section 8 of the act a certified copy of the decision of the Workmen's Relief Commission is required to be served upon both applicant and employer, and that under section 9 the party aggrieved is entitled to appeal to the District Court, where there is a trial de novo on both law and facts. Compare Statutes of Porto Rico of March 11, 1908.

It follows that all conceivable rights of the employer to be heard as to the amount of compensation to be awarded any employee are fully safeguarded.

[7] As to the second contention (not set up in the bill), assuming that it is open, we find that also without merit. The proceedings of the Workmen's Relief Commission are grounded on pay rolls, lists of employees, and other data required to be furnished by the employers themselves. In the very nature of the proceedings required, the employer must have an opportunity to be heard concerning the grading of his occupation and the amount of insurance premiums to be assessed upon him. Moreover, it is provided in section 6 of the act that the "Commission shall have power to adopt such rules and regulations as may be necessary to carry out the provisions of this act not inconsistent therewith, and that such rules and regulations shall have the force of law."

In the bill it is alleged that the Commission has adopted certain rules and regulations. But these rules and regulations are not before us. Certainly there is no presumption that the natural implications of the statute, as to notice and hearing concerning the matters directly affecting the rights of the employers contributing to the trust fund out of which compensation is to be paid, are not in detail covered by such rules and regulations. The mere fact that the statute does not contain an explicit provision for a defined sort of notice and hearing as to the fixing of the assessment to be paid by each employer is immaterial, if in fact under the procedure practiced, if not explicitly required, such right is fully safeguarded. There is certainly no presumption that the statute is administered in any unjust or oppressive manner.

[8] Moreover, the statute provides in section 11 that unpaid insurance premiums shall by the treasurer be collected "in accordance with the law and procedure which is at present or which may hereafter be in force for the collection of unpaid property taxes." This procedure is described in Revised Statutes and Codes of Porto Rico, § 2988 et seq. These provisions are analogous to familiar provisions of law concerning the collection of taxes by sale of property, with a right to pay the tax under protest and sue to recover if the tax is found in whole or in part illegal. To hold the system under which the insurance premiums under this Workmen's Compensation Act are assessed and collected void for lack of due process would fall little short of holding that the entire tax system of Porto Rico is void as repugnant to due process.

No case is cited which on analysis sustains any such destructive proposition. See Glidden v. Harrington, 189 U. S. 255, 258, 23 Sup. Ct. 574, 47 L. Ed. 798, and cases cited. In that case the court said concerning a similar contention:

"Although, with respect to this class of taxes, we have never had occasion to determine exactly what the Fourteenth Amendment required, we have held that the proceedings should be construed with the utmost liberality, and while a notice may be required at some stage of the proceedings such notice need not be personal, but may be given by publication or by posting notices in public places. It can only be said that such notices shall be given as are suitable in a given case, and it is only where the proceedings are arbitrary, oppressive or unjust that they are declared to be not due process of law. Davidson v. New Orleans, 96 U. S. 97; Hagar v. Reclamation District, 111 U. S. 701; Paulsen v. Portland, 149 U. S. 30; Pittsburgh, etc., Railway Co. v. Backus, 154 U. S. 421; Allen v. Georgia, 166 U. S. 138; King v. Portland, 184 U. S. 61; Simon v. Craft, 182 U. S. 427; Turpin v. Lemon, 187 U. S. 51.

"In the Kentucky Railroad Tax Cases, 115 U. S. 321, it was held that a state statute for the assessment of taxes, which gave notice of the proposed assessment to the owner by requiring him at a time named to present a statement of his property, with an estimate of its value, which fixed time and place for public sessions of other officers, at which this statement and estimate were to be considered, where the party interested had a right to be present and to be heard, and which gave him opportunity to judicially contest the validity of the proceedings, was due process of law within the Fourteenth Amendment. In Lent v. Tillson, 140 U. S. 316, it was held that in a case of a special assessment for widening streets, publication in a newspaper was sufficient to property owners interested."

On the whole record, we conclude that the motion for a preliminary injunction should have been denied, and the motion to dismiss should have been granted.

The decree of the District Court is vacated, and the case is remanded to that court, with directions to enter a decree dismissing the bill, with costs, and the appellants recover costs of appeal.