Antonio Roig Torrellas, demandante y apelante, *v.* Juan G. Gallardo, Tesorero, demandado y apelado.

Nos. 4598–4599.—*Sometidos:* Febrero 27, 1929. *Resueltos:* Junio 26, 1929.

*F. González Jr.*, abogado del apelante; *Hon. Attorney General James R. Beverley* y *J. A. López Acosta* y *R. Cordovés Arana*, Sub-Procuradores.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

En 29 de octubre de 1926 y 1º. de marzo de 1927, Antonio Roig Torrellas, vecino de Humacao, pagó bajo protesta las contribuciones que se le impusieron a virtud de las leyes sobre reorganización de la Universidad y desarrollo de las fuentes fluviales correspondientes al año económico 1926–27, e inició estos dos pleitos pidiendo la devolución de las mismas basándose en que las citadas leyes eran anticonstitucionales.

La parte demandada en ambos casos alegó que las demandas no aducían hechos suficientes para determinar una buena causa de acción y así lo resolvió la Corte. No siendo enmendables las demandas se pidió que se dictara sentencia.

Registradas que fueron el 26 de marzo de 1928, el demandante apeló para ante esta Corte Suprema. Los recursos se tramitaron separadamente pero los resolveremos por una sola opinión ya que son las mismas las cuestiones que en ellos se discuten.

■ La ley reorganizando la Universidad se impugna en la demanda así:

"7º . . . que la Ley No. 50, aprobada el 21 de julio de 1925, así como la Ley No. 7, aprobada el 14 de julio de 1926, están en oposición a la sección 34 de la Ley Orgánica de Puerto Rico, conocida con el nombre de Acta Jones, porque . . . se fué más allá del asunto comprendido en el título que sólo se refería a reorganizar la Universidad e impone una contribución especial para la reorganización y sostenimiento de aquélla, y en el cuerpo de la ley se proveen fondos para el sostenimiento del Gobierno Insular, para las atenciones del mismo.

"8º . . . que tanto la Ley No. 50, aprobada en 21 de julio de 1925, como la Ley No. 7, aprobada en 14 de julio de 1926, son contrarias al artículo 17 del Acta Orgánica, por cuanto cercenan las facultades del Comisionado de Instrucción, contenidas en dichos preceptos."

Examinemos el primer motivo de impugnación. El precepto de la Ley Orgánica invocado, o sea la sección 34, párrafo 8, de la misma, dice:

"No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto; pero si algún asunto que no esté expresado en el título fuere incluido en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título."

El título de la ley que se alega que es inconstitucional es como sigue:

"Ley para reorganizar la Universidad de Puerto Rico, derogar la Ley de la Universidad, aprobada el 28 de julio de 1923, imponer una contribución especial para la reorganización y sostenimiento de aquélla y establecer otras fuentes de ingresos con el mismo objeto, y para otros fines."

Y las secciones de dicha ley y de su enmienda que a juicio del apelante infringen la sección 34 del Acta Orgánica, expresan:

"Sección 12. Por la presente se autoriza y se ordena al Tesorero de Puerto Rico a imponer y recaudar una contribución de veinte centésimas del uno por ciento para *beneficio de la Universidad de Puerto Rico* . . . Disponiéndose, que en cualquier tiempo que el producto de dicha contribución excediere de la suma de $600,000 el Tesorero deberá y por la presente así se ordena, ingresar el excedente que de esa suma resultare en los fondos generales de la Tesorería de Puerto Rico para las atenciones corrientes del Gobierno Insular . . ."

"Sección 12 (enmendada). Por la presente se autoriza y se ordena al Tesorero de Puerto Rico a imponer y recaudar anualmente una contribución de veinte centésimas del uno por ciento para beneficio de la Universidad de Puerto Rico . . . Disponiéndose, que en cualquier tiempo que el producto de dicha contribución excediere de la suma de trescientos mil (300,000) dólares durante el año económico de 1926–1927, y de seiscientos mil (600,000) dólares en los años sucesivos, el Tesorero deberá y por la presente así se lo ordena, ingresar el excedente que de esa suma resultare en los fondos generales de la Tesorería de Puerto Rico para las atenciones corrientes del Gobierno Insular."

Un examen cuidadoso de los preceptos legales expuestos, nos lleva a concluir que estuvo acertada la corte de distrito al resolver que tratándose como se trataba de asuntos germanos, no se había violado la disposición constitucional invocada.

No hay duda alguna que el fin principal de la ley fué el que su título indica o sea la reorganización de la Universidad y el proveer lo necesario para su sostenimiento. Por la sección 12 se dispuso simplemente de lo que pudiera sobrar, disposición que sirve para no dejar en lo incierto el uso de tal sobrante en el caso de existir, ya que se fijó un límite a lo destinado a la Universidad.

Quizá la enmienda introduzca alguna duda dada la considerable reducción del límite fijado para la Universidad para el año 1926–27, pero aun así creemos que la jurisprudencia

es suficientemente amplia para sostener la conclusión enunciada.

Como alega la parte apelada:

"La ley habla en su título de 'imponer una contribución especial para la reorganización y sostenimiento de la Universidad' y en relación con esta contribución especial como una cuestión subordinada a su principal objeto: el levantar rentas, se inserta en la ley el *disponiéndose objeto de esta discusión*. La preinserta disposición es más bien un 'minor subject' relacionado o germano a la cuestión de levantar rentas. No cabe sostener que existe pluralidad de sujetos en la ley no expresados en su título.

"'Esto abarca un solo asunto principal, y es del todo suficiente para evitar la confusión dañosa prohibida por la Carta Orgánica. Carter County v. Sinton, 120 U. S. 517, 7 S. Ct. 650, 30 L. ed. 701; Jonesboro City v. Cairo & St. Louis R. Co., 110 U. S. 192, 4 S. Ct. 67, 28 L. Ed. 116; Louisiana v. Filsbury, 105 U. S. 278, 26 L. Ed. 1090; Benedist, Treas., v. Porto Rican American Tobacco Co. (C.C.A.) 256, F. 422. 18 Fed. (2d) 918, 922.'"

Véanse los casos de *El Pueblo* v. *Arrocho*, 34 D.P.R. 847, 855, en el que se cita y aplica la jurisprudencia sobre la materia tal como aparece resumida en Ruling Case Law, y el de *Trigo* v. *Banco Territorial y Agrícola*, 36 D.P.R. 275, 301.

El segundo motivo de impugnación levanta una cuestión de verdadera trascendencia.

La ley reorganizando la Universidad, Ley No. 50 de 1925, en su sección 11 prescribe:

"Sección 11.—Todos los derechos por concepto de enseñanza, derechos de laboratorio, derechos por rotura y gastos análogos, pagados por los estudiantes, junto con los ingresos por concepto de venta de terrenos de la Universidad, productos de la finca, u otra propiedad de la Universidad, por la presente quedan asignados a la Universidad de Puerto Rico para ser gastados bajo la dirección de su Junta de Síndicos, juntamente con cualquier otro impuesto o contribución que acuerde la Asamblea Legislativa de Puerto Rico, para todos los propósitos que a su juicio redunden en beneficio de los intereses de la Universidad de Puerto Rico, incluyendo la compra de terreno y construcción de edificios, así como también los gastos corrientes."

Y se sostiene que ese precepto es contrario a la sección 17 del Acta Orgánica y por tanto nulo. La sección 17 dispone:

"El Comisionado de Instrucción dirigirá la instrucción pública en toda la Isla; todo desembolso propuesto por cuenta de la misma deberá ser aprobado por él, y preparará todos los cursos de estudio, con sujeción a la desaprobación del Gobernador si éste deseare intervenir. Preparará reglamentos para la selección de maestros, y los nombramientos de maestros por las juntas escolares estarán sujetos a su aprobación, y desempeñará los demás deberes, no incompatibles con esta Ley, que se le asignaron por ley."

La razón que tuvo la corte de distrito para declarar sin lugar la contención del demandante se expresa en su relación del caso y opinión, así:

"Del examen de dicha ley (reorganizando la Universidad) aparece que uno de los miembros de la Junta de Síndicos, que por la misma se establece lo es el Comisionado de Instrucción, así es que tanto en la revisión cuanto en la disposición de los fondos de la Universidad, interviene de una manera directa el Comisionado de Instrucción."

A nuestro juicio la conclusión a que llegara la corte sentenciadora se sostiene porque lo prescrito en la sección 11 no es de tal manera final que excluya la actuación del Comisionado de Educación que quizá esté debidamente regulada al efecto.

La disposición de que se trata, como sostiene la parte apelada en su alegato, debe considerarse que se ha insertado en la ley para guía de los funcionarios encargados del desembolso del producto de la contribución y para nada tiene que ver con el procedimiento seguido en la imposición y recaudación de la contribución impuesta por lo que el contribuyente no podría ampararse en ella para impugnar la validez de la contribución ya que en nada le perjudica. Este no es un pleito establecido por el Comisionado de Educación sino por un contribuyente.

"Después que las contribuciones han sido recaudadas, su inversión y distribución están generalmente reglamentadas por el esta-

tuto. La distribución es algo separado c independiente de la imposición de las contribucione's, de suerte que la validez o nulidad de la primera no afecta a la segunda. Por.ejemplo: Un error en una ley de contribuciones que dispone la ·forma de distribuírlas, no afecta la validez de la contribución en sí. Las disposicione's constitucionales relativas a la 'imposición y recaudación' de contribuciones no son aplicables a la distribución del producido del impue'sto.'' Cooley on Taxation, Vol. 4, 4ª. ed., pág. 3561.

Parece conveniente agregar que al adoptar el criterio que dejamos expuesto, hemos tenido muy en cuenta la presunción de constitucionalidad que existe a favor de la Ley No. 50 de 1925 al no haber sido anulada por el Congreso y a esto respecto es oportuno citar los siguientes párrafos de dos opiniones de la Corte de Circuito de Apelaciones del Primer Circuito. Son así:

''El artículo 34 también dispone que:

'' 'Todas las leyes decretadas por la Asamblea Legislativa de Puerto Rico 'serán comunicadas al Congreso de los Estados Unidos . . . el cual se reserva por la presente la facultad y autoridad de anularlas.'

''De no ser anuladas dentro de un término razonable, surge la presunción de que han sido aprobadas. Tiaco v. Forbe's, 228 U. S. 549, 558, 33 S. St. 585, 57 L. Ed. 960; Porto Rico v. American, etc., R. R., 254 F. 369, 165 C.C.A. 589; Camuñas v. P. R. Ry. ʹC.C.A.) 272 F. 924, 931, y casos allí citados.

''El resultado es que toda la legislación portorriqueña existente ahora en lo's estatutos es—en un sentido muy real, aunque indirecto —obra de nuestro Gobierno Federal. Bajo tales condiciones la corte no debe asumir ligeramente que las leyes contributivas de Puerto Rico, que ahora se alega están en conflicto con el artículo 20 de la Carta Orgánica, son inconsistentes y, por tanto, nulas. Indudablemente, la relación de la Carta Orgánica con el Gobierno de Puerto Rico es, en ciertos aspectos, igual que la relación de la Constitución de un estado con su legislatura. Camuñas v. P. R. Ry., etc., Co., (C.C.A.) 272 Fed. 924, 928.

''Pero la analogía no e's completa, ya que, después de todo, la Carta Orgánica no es otra cosa que legislación federal, y la legislación portorriqueña aprobada expresa o implícitamente por el Congreso, tiene exactamente el mismo alcance.

''A la luz de estas explícitas disposicione's, consistentes con la

armazón general del Gobierno de Puerto Rico, existentes de acuerdo con los estatutos portorriqueños aprobados por el Gobernador o implícitamente aprobados por el Congreso, no podemos resolver que el Contador forma, según ahora se alega, parte de la maquinaria que fija y administra las contribuciones en Puerto Rico.'' Fajardo Sugar Co. v. Holcomb, 16 Fed. (2d) 92.

'' . . . Si bien la Carta Orgánica es una quasi-constitución para Puerto Rico, según los demandados arguyen, también es legislación del Congreso, el que se reserva amplios poderes para anular las actuaciones de la Legislatura de Puerto Rico, y no ha anulado la ley relativa a las fuentes fluviales. El dejar de anular la ley tiene algún peso, aunque no es concluyente . . . No obstante, la Carta Orgánica es obra de un gobierno que impone contribuciones para extensos programas de mejoramiento, incluyendo el desarrollo de las fuentes fluviales, que construyó el Canal de Panamá (que ahora está rindiendo utilidades), y que está llamado a comprar y a explotar el Canal de Cabo Cod. No debe dársele al poder de imponer contribuciones concedido por tal gobierno a la isla de Puerto Rico una interpretación estrecha y mutiladora. Considerando la cuestión de interpretación de la Carta Orgánica estrictamente como una de constitucionalidad (sin serlo) no basta que exista la duda; debe mediar claramente una cuestión de inconstitucionalidad para que las cortes estén justificadas a declarar nula la ley. Green v. Frazier, 253 U. S. 233, 40 S. Ct. 499, 64 L. Ed. 878.'' Gallardo v. P. R. Ry. Light & P. Co., 18 Fed. (2d.) 917, 923.

■ La otra ley—la que se refiere al desarrollo de las fuentes fluviales, No. 60, de 1925—que el demandante consideró anticonstitucional, lo fué porque

'' . . . sólo impone contribución sobre propiedad inmueble radicada en la Isla de Puerto Rico, quedando relevados de dicha contribución los bienes muebles y toda propiedad mueble e inmueble radicada en los municipios de Vieques y Culebra, que forman parte de la Isla de Puerto Rico.'' Hecho 9 de la demanda.

Para sostener que no existe el error señalado bastará decir que la cuestión suscitada ha sido repetidamente resuelta por los tribunales en contra del demandante. *Gallardo v. P. R. Ry. Light & Power Co.,* 18 Fed. (2d) 918; *American Cigar Co. v. Gallardo, Tesorero,* 38 D.P.R. 152.

*Deben confirmarse las sentencias recurridas.*